## James U. Rogers v. Austin C. Odell and others.

*Specific performance: Land contract: Certificate: State patent: Fraud.* One who held a part paid certificate for state university lands, and which he had mortgaged, having sold to complainant his remaining interest and put him in possession, and then subsequently assigned his certificate to another person who advanced the money to take up the mortgage and to pay the balance due the state and thereupon obtained a state patent, a bill in equity against the original owner, the mortgagee and the subsequent purchaser, for specific performance of complainant's contract and to enjoin ejectment, is sustained.

*Contracts: Partial agreements: Written instrument: Evidence.* A written contract being set up in the bill and produced in proof, which is complete in itself, it was held that it was not impeached by an averment in the sworn answer that it constituted but part of the entire contract of which the residue was reduced to writing and in complainant's possession, nor by contradictory and unsatisfactory proofs by parol of an agreement not supplementary to the writing produced and proved.

*Evidence: Inconsistent action.* The failure of the vendor to take any steps to forfeit the contract or to demand further payment or to dispossess the vendee, when if his version of the contract were true there were several installments past due and unpaid, and the acceptance as satisfactory of payments which were much less than is now asserted to have been due at the time, are significant facts tending to discredit his testimony.

*Written contracts: Mistake.* It requires very strong equities to induce a court to refuse to enforce a written contract, even where a mistake is alleged to have been made in drawing it up.

*Heard April 13.    Decided April 24.*

Appeal in Chancery from Kalamazoo Circuit.

*Robert F. Hill* and *Arthur Brown,* for complainanant.

*May, Buck & Powers,* for defendants.

CAMPBELL, J:

Complainant filed his bill to obtain specific performance of a land contract, and to prevent an action of ejectment brought to remove him from the premises in controversy.

The facts are in some respects agreed upon, and in some disputed. The undisputed facts are as follows: Odell owned a state land office certificate for forty acres of uni-

versity land, on which there was unpaid not far from two hundred and seventy dollars. This was hypothecated or mortgaged to Peter Johnson for a loan of two hundred and fifty dollars and interest.

In the fall of 1870 Odell agreed to sell out his remaining interest in the land to complainant Rogers, and put him in possession, where he has remained ever since. A written agreement was drawn up by one Hawkins, a justice of the peace, under the direction of Odell, and signed by him, and delivered to complainant, dated November 26, 1870. This agreement provides that on the payment of two hundred and fifty dollars, one hundred down, and one hundred and fifty dollars on or before March 23, 1871, with interest at ten per cent., Odell is to transfer to Rogers all his right, title and interest in the land certificate.

Rogers paid down the one hundred dollars, and made small payments at various times until February, 1873, when he completed the payment of one hundred and fifty dollars and interest, and claimed that he had fully complied with his agreement. Odell claims he made no such assertion, but the steps he took immediately thereafter show that this is not so. Notice was at once given to Odell, in writing, demanding compliance.

Odell then made a sale to Mrs. Squires, who advanced the money to pay Johnson and the state, and obtained a state patent. She also advanced some more money to Odell. The answer, which was sworn to, claims that Odell told her Rogers had forfeited his contract. It also claims that she purchased of Odell for twelve hundred dollars. Odell swears she paid down nine hundred and seventy-five dollars, and that the price was twelve hundred and fifty dollars, the balance of which she was to pay when she got possession. Mrs. Squires, in her direct examination, says the price was twelve hundred and fifty dollars. On her cross-examination, she swore she had paid nine hundred dollars down, and was to pay three hundred dollars more when she got possession, and that there were two receipts taken at different times,

and that there was no agreement as to what should happen if she failed to get possession. The receipts appearing in the record are for five hundred and twenty-five dollars, and two hundred and seventy-five dollars, making eight hundred dollars. The first of these receipts, for five hundred and twenty-five dollars, was dated March 14, 1873, and bound Odell to procure her for that amount the state title and quit possession. The second receipt, purporting to be dated March 28, 1873, acknowledges payment of two hundred and seventy-five dollars to apply on purchase price, "leaving a balance due me, A. C. Odell, the sum of three hundred dollars from Sarah Squires, balance of purchase price of said lands." These receipts are not identified, nor proven, so far as we can learn from the record, although marked as exhibits. Assuming them to be genuine, and to have been given at their dates, they would make the price eleven hundred dollars. In the view we take of the facts, we shall not discuss these apparent discrepancies.

On the 28th of March the attorneys of Mrs. Squires notified Rogers that she had purchased the land and held the patent, and demanded an immediate surrender.

Rogers has paid all the taxes since his purchase, and paid interest to Johnson and to the state, and has made improvements of some value.

No attempt was ever made to forfeit the contract, and there is no evidence of any complaint or demand indicating that he was seriously in default at any time.

The defense, nevertheless, is based on the assertion that when Rogers purchased of Odell the price was fixed at thirteen hundred and fifty dollars, and the answer avers it was payable as follows: two hundred and fifty dollars and interest to Johnson; two hundred and seventy-five dollars and interest to the state; and eight hundred and twenty-five dollars to Odell, of which one hundred dollars was to be paid down, and the balance in annual payments of two hundred and fifty dollars each, with annual interest at ten per cent. This would make the first annual payment due November 26,

ROGERS v. ODELL.

1871, three hundred and thirty-two dollars and fifty cents, and the second, if the first was promptly paid, three hundred and seven dollars and fifty cents, due November 26, 1872.

The answer does not deny the execution of the written contract set up in the bill, but says it was only a part of the contract, and that the remainder was reduced to writing and in possession of complainant. Odell, in his testimony, claims that he understood the paper set up in the bill to contain the entire contract for thirteen hundred dollars, as set up in the answer, and that he would not have signed it unless he had so supposed.

There are statements of various witnesses tending to show that Rogers from time to time stated that he had purchased on the terms alleged by Odell.

The answer was sworn to and does not agree with the testimony. If any other writing was drawn up, it would have been some agreement signed by Rogers and delivered to Odell. And it is impossible that any such writing should have existed which contained matter merely supplementary to such a paper as was shown in the bill. The entire arrangement set up by Odell was contradictory, and not supplementary, to that document.

When Rogers made his payment in February, 1873, the only dispute between him and Odell is as to whether he said it was in full of the contract, as sworn to by himself and a witness Walker, or in full of the first payment. Odell swears that he dropped his voice in saying "on the first payment," and that he suspected a secret understanding with Walker. He appears to insinuate that Walker was meant not to hear this clause so that he might swear to an undenied allegation of full payment. And he says that after Walker had moved out of hearing, Rogers and he had a little further talk as to whether it made up the first payment in full, of which he claims not to have been certain without reference to his books.

If the contract had been as Odell claimed, the first pay-

ment would have been less than half paid, as it was, with the interest in arrears upon it, in the neighborhood of three hundred and seventy-five dollars, and there would have been due at this time, including the second payment, which was three months in arrears, more than six hundred and seventy-five dollars. Yet all that had been paid, in small sums and in fruit and vegetables, was one hundred and fifty dollars and interest. And no claim is pretended by Odell to have been made at that time, that he required further payments or made complaints about them, or that he supposed the first payment was not substantially discharged.

The proofs show that the paper signed by Odell was deliberately and knowingly signed, and the answer admits it, but claims it was only one of two papers. This theory cannot be maintained so as to be consistent with any of the claims of the defense as to what the contract really was.

The course of Odell, in attempting to defeat Rogers, as soon as he had completed the payment which the written agreement called for, by hurrying the title into the name of Mrs. Squires, was not such as could have been justified under any circumstances. He made no demand on Rogers for further payments, and gave him no notice to quit, but at once procured Mrs. Squires to obtain the state patent and clear off Johnson's incumbrance, and she thereupon began hostile action to turn out Rogers and deprive him of all his expenditures.

It requires very strong equities to induce a court to refuse to enforce a written contract, even where a mistake is alleged to have been made in drawing it up, which is not pretended in the answer, although averred in the testimony.

We do not think the defense is made out. The testimony is certainly conflicting. But the whole conduct of the parties, and the circumstances of the case, indicate that there are no satisfactory proofs of such equities as should deprive Rogers of his land.

The decree must be affirmed, with costs. As the time

of payment was interrupted by the appeal, it will be extended to ninety days from the entry of decree in this court, and in default of payment, application may be made to the circuit court for a sale as on mortgage proceedings, to collect the amount.

The other Justices concurred.