DONALD J. CAMERON v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.[1]

January 18, 1895.

No. 9188.

### Adverse Possession—Statute of Limitations.

While the transfer of possession by a mere licensee to a third party terminates the license, and gives the licensor the right, if he so elects, to treat the transferee as a trespasser, yet the possession of such transferee is not adverse, so as to set the statute of limitations in motion, unless such adverse holding is declared, and brought to the knowledge of the licensor.

[1] Reported in 61 N. W. 814.

**Same—Circumstances of Case Construed.**

While a presumption that the possession of the transferee had become adverse may arise from the long acquiescence of the licensor, after the termination of the license, without asserting his legal rights, yet, under the facts of this case, this court would not be justified in holding, as a matter of law, that the possession of the transferee had become adverse 15 years before the commencement of this action.

**Laches—Estoppel.**

*Held,* also, that the plaintiff was not estopped by his laches from asserting his title against a transferee of the licensee.

**Ouster.**

Also, that, if plaintiff and defendant were tenants in common of the premises, the acts of the defendant amounted to an ouster of the plaintiff.

Appeal by defendant from an order of the district court for Fillmore county, Whytock, J., denying its motion for a new trial. Affirmed.

The certificate of foreclosure sale in 1877 to trustees, and the conveyance from those trustees to the Southern Minnesota Railway Company, were recorded in Fillmore county February 13, 1886. The other facts are stated in the opinion.

*H. H. Field* and *Wells & Hopp,* for appellant.

*Gray & Thompson* and *Davis, Kellogg & Severance,* for respondent.

MITCHELL, J. This action was commenced in March, 1893, to recover possession, and damages for the detention, of a strip of land 100 feet in width, across a 40-acre tract, and of certain lots abutting said strip, all embraced within the limits of the plat of the village of Fountain, in Fillmore county. An examination of the record and the briefs of counsel satisfy us that the determination of the case depends upon the single question whether the defendant had, before the commencement of the action, acquired title to the premises by adverse possession. There is practically no conflict in the evidence. It appears that in June, 1870, the plaintiff being the owner of one undivided half, and Wyckoff and Holley being the owners of the other undivided half, of the tract referred to, they all joined in platting it as the village of Fountain. Upon this plat there was laid out the 100-feet strip now in dispute, running diagonally through the tract, having no designation as to the purpose

for which it was so laid out. At this time the Southern Minnesota Railroad Company was engaged in constructing its railroad westerly through the southern tier of counties in this state, and had surveyed its line through this tract. All the owners who joined in the plat were interested in the construction of the road,—Wyckoff and Holley, as officers of the company; and the plaintiff, as agent for the contractor who was constructing the road,—and the land was evidently platted in the expectation that the railway company would acquire and use the 100-feet strip for its right of way, and locate a station at that place. Subsequently, and during the same year (1870), the railway company built its road over and upon this 100-feet strip, by the permission and license of the plaintiff, with the understanding that it was to be purchased and paid for by the company afterwards, when it was able to do so, the company being at that time short of funds. Leaving out of consideration questions as to the subsequent construction of additional tracks on this strip, and as to the extent and duration of the occupancy of the abutting lots, it may be stated generally that the railway company continued in the possession of the premises, using them for railway purposes, until all its property and franchises were sold in February, 1877, under a decree of foreclosure, to certain trustees, who immediately conveyed the same to another corporation, called the Southern Minnesota Railway Company, which entered into possession of the premises, and used and occupied them for railway purposes, precisely as had been previously done by the Southern Minnesota Railroad Company, and continued in such occupancy and use until it sold out, in January, 1880, to the defendant, which immediately went into possession, and continued their occupancy and use the same as before. Neither the Southern Minnesota Railroad Company nor either of its successors ever took any steps towards purchasing or paying for the land, and during all this time plaintiff remained passive; asserting no claim for either compensation for or possession of the premises until 1884, when he demanded of defendant that it purchase and pay for the land so occupied, which it has failed to do. The plaintiff had no notice—at least, no actual notice, and no constructive notice from anything of record in Fillmore county—of the change of ownership and possession of the road from the Southern Minnesota Railroad Company to the Southern Minnesota Railway

Company, but did learn in 1880 or 1881 of the transfer to the defendant. There is no evidence that either the Southern Minnesota Railroad Company, the Southern Minnesota Railway Company, or the defendant ever acquired any right, by license or otherwise, from Wyckoff and Holley, the owners of the other undivided half of the premises. The trial court held that the statute of limitations had not run in favor of defendant, on the ground that neither its possession nor that of its predecessors was adverse to plaintiff, because they and he were tenants in common. As we have reached the same result upon another ground, it is unnecessary to consider the soundness of the one taken by the trial court.

The line of argument adopted by defendant's counsel may be summarized as follows: A license being a personal privilege, and not assignable or transferable, the license from plaintiff to the Southern Minnesota Railroad Company was terminated or extinguished by the transfer of the right of the latter to the Southern Minnesota Railway Company under the foreclosure sale in February, 1877, and therefore the possession of the Southern Minnesota Railway Company and its successor, the defendant, was adverse to plaintiff, so as to set the statute of limitations running February, 1877. The premise is unquestionably correct, but the fallacy consists in assuming that a transfer of the right of a licensee ipso facto renders the possession of the transferee adverse to the licensor. Possession by the transferee after the license has been thus terminated may become adverse, but not necessarily so. That will depend on circumstances. The rule is that where the entry is permissive the statute will not begin to run against the legal owner until an adverse holding is declared, and notice of such change is brought to the knowledge of the owner. The possession of the owner cannot be disturbed by the adverse act of a licensee, any more than of a lessee. In both cases his possession is the possession of the owner, and his grantee or assignee but steps into his shoes, and takes cum onere. While an attempted transfer of the right of the licensee terminates the license, and the licensor has the right to treat the transferee as a trespasser, yet it is optional with him to do so, or to continue or renew the license. His acquiescence in the possession of the transferee, without interference or prohibition, may be such as to be regarded as amounting to a continuance or renewal of the

license in favor of successive occupants. It is true that under certain circumstances the true owner may have acquiesced in the possession of a licensee, or even of a lessee, after the termination of the license or the lease, without asserting his legal rights, for such a length of time that a presumption would arise that the possession had become adverse. But we do not think that, under the facts of this case, the delay of the plaintiff in asserting his right to either pay for or possession of the premises was such as to justify the presumption that the holding had become adverse 15 years before the commencement of this action; that is, in 1878. At least, it would not justify this court in so holding as a matter of law, which we would have to do in order to reverse the decision of the court below. Luce v. Carley, 24 Wend. 451; Brandter v. Marshall, 1 Caines, 394; Babcock v. Utter, 1 Keyes, 397.

The contention that the claim of the plaintiff is barred by the six-years limitation proceeds upon the theory that his only remedy was to bring an action to recover compensation for the land taken. This is not in accordance with the doctrine of this court. Lamm v. Chicago, St. P., M. & O. Ry. Co., 45 Minn. 71, 47 N. W. 455; Watson v. Chicago, M. & St. P. Ry. Co., 46 Minn. 321, 48 N. W. 1129; Kremer v. Chicago, M. & St. P. Ry. Co., 51 Minn. 15, 52 N. W. 977; Minneapolis Mill Co. v. Minneapolis & St. L. Ry. Co., 51 Minn. 304, 53 N. W. 639.

Conceding that the Southern Minnesota Railway Company was entitled to the privilege of buying the land, yet, if it failed to do so, the plaintiff had the right to revoke the license, and sue to recover possession.

Undoubtedly a person may, short of the statutory limitation, be estopped by his own laches from asserting his title; but the facts of this case fall very far short of containing the essential elements of an equitable estoppel. Nothing was ever done on the premises by either the defendant or its predecessors on the faith of apparent title derived from the plaintiff, for the record title always remained in him. All the improvements on the land were made by the original licensee shortly after the license was given, except such as were made by the defendant after plaintiff had asserted his rights, in 1884. There are some circumstances in the case which perhaps tend to create a suspicion that possibly it may have been the original intention of the owners of this land to donate it to the railway

company, in consideration of the benefits which they expected to derive from the location of a station at that point; but the testimony is, and the court has found, to the contrary.

Counsel contend that if it is to be presumed that defendant is rightfully in possession of the other undivided half of the premises, under Wyckoff and Holley, then it and plaintiff are tenants in common, and therefore ejectment will not lie, because there is no evidence that plaintiff has been ousted by defendant. Assuming that the suggested presumption obtains, yet the facts that plaintiff demanded that defendant purchase and pay for his half of the premises, and that defendant refused or failed to do so, but retained exclusive possession, denying plaintiff's title, and asserting title in itself, was such an assertion of a hostile claim and usurpation of the entire premses by defendant as to constitute an ouster of the plaintiff.

This covers everything of substance in defendant's assignment of errors, and the result is that the order appealed from must be affirmed.