# PIKE RAPIDS POWER COMPANY v. ISIDORE SCHWINTEK AND OTHERS.[1]

February 1, 1929.

No. 26,930.

[1]Reported in 223 N. W. 612.

*Frederick J. Miller,* for appellants.

*C. Rosenmeier* and *Washburn, Bailey & Mitchell,* for respondent.

HILTON, J.

Defendants Isidore Schwintek and Margaret Schwintek appeal from a judgment in favor of plaintiff.

Action to require said defendants to execute and deliver to plaintiff a deed for certain real estate, upon payment of a stated price, as specific performance of a flowage contract.

Plaintiff is a Minnesota corporation. Defendants Isidore and Margaret Schwintek are husband and wife; Vincent Schwintek and Albina Schwintek, later made defendants herein, are husband and wife and parents of Isidore Schwintek. They will hereinafter be referred to by use of first names. Prior to February 9, 1910, Vincent was the owner of lots 3 and 4, section 29, township 128, range 29 west, unimproved land bordering on the west bank of the Mississippi river. On that date Vincent and his wife conveyed to plaintiff by warranty deed 27.21 acres of said lots 3 and 4, described by metes and bounds. This deed was duly recorded on February 14, 1910.

On February 9, 1910, Vincent and his wife executed and delivered to plaintiff the flowage contract here involved, which was recorded on the same day as the deed. The rights granted to plaintiff were also for the benefit of its successors and assigns and were binding on grantors, their executors, administrators and assigns.

This contract contained the provisions usually found in flowage contracts and in addition many special provisions. Its terms were plain and all-inclusive; nothing was left for conjecture. The purpose of plaintiff was stated to be the construction, maintenance and operation of a dam or dams across the Mississippi river and for other purposes therein specified. The lands described in the contract were said lots 3 and 4, and plaintiff was to have the right permanently to overflow not only the 27.21 acres that day purchased

"for which payment has been made as a part of this transaction," but all or such part of the remainder of such lands as the waters might overflow, for the sum of $50 per acre. The price was to be paid when such flooding occurred, and grantors were, upon demand, to execute any conveyances necessary to carry out the terms of the contract. The usual provisions of release, discharge and acquittal of damages appear in the contract.

On November 16, 1912, Vincent and his wife conveyed to Isidore said lots 3 and 4, excepting the land theretofore sold and transferred by them to plaintiff by warranty deed.

Early in 1924 plaintiff commenced the erection of the dam, which when completed in 1925 resulted in the flooding of portions of lots 3 and 4, including the portion theretofore deeded to plaintiff, and in addition 35.46 acres (which in the judgment are described by metes and bounds) the acreage last referred to being the portion for which plaintiff, by the terms of the contract, was to pay the sum of $50 per acre.

Prior to the commencement of this action and on July 25, 1925, and as soon as the exact acreage could be ascertained, plaintiff tendered the required amount, together with accrued interest, as payment for said 35.46 acres, and demanded a deed. The money was not accepted nor the deed executed. At the trial plaintiff offered to pay the proper amount into court, which offer was refused. Judgment for specific performance was ordered, and the money was paid into court.

Various assignments of error call in question the refusal of the court to strike out certain findings, make new ones, and amend others. The various contentions of defendants are summarized in the following grounds: (1) No meeting of minds; (2) no consideration; (3) adverse possession; (4) specific performance would be inequitable.

█ It is contended that there was no meeting of the minds of the parties when the flowage contract was entered into. The lower court thought otherwise. In some cases where it is manifest that there was no meeting of the minds, relief should be granted. This

is not such a case. There is no allegation or proof of any fraud, nor was there any misrepresentation on the part of plaintiff. This contract is not unenforceable because of mistake of fact. There was no such mistake proved. In order to avoid a written agreement, formally signed and delivered, by means of parol evidence of mistake, such mistake must be clearly established by cogent evidence. The error must be plain and the proof clear and convincing. The burden of proof is on defendant to make out a defense of mistake. Pomeroy, Sp. Perf. Cont. (3 ed.) § 253; Buckley v. Patterson, 39 Minn. 250, 39 N. W. 490; Rogers v. Odell, 36 Mich. 411; 36 Cyc. 607; 4 Dunnell, Minn. Dig. (2 ed.) § 6124.

There was full consideration given to the subject matter of the contract which the trial court referred to as "most careful and painstaking consideration and study." Vincent and his wife must have understood its contents and known that they were signing a flowage contract calling for all that additional part of lots 3 and 4 as might be required for flowage purposes. The court further stated: "They understood fully its [the contract's] contents and purports." They were assisted at the conference by Barton, a close personal friend, a man of recognized business ability, who spoke both the English and Polish languages. Vincent was a man of intelligence, had held many local public offices, and was vice president and director in a local bank of which his friend Barton was the cashier. Vincent was not unconversant with the English language. In the negotiations leading up to the giving of the flowage contract he showed business ability and shrewdness. This is not a case where a party was induced to sign a prepared instrument without examination or deliberation. Prior to the occurrences hereinbefore referred to, and in 1906, a flowage contract relative to the same lands was entered into by Vincent and his wife with one Oberley. It too was the subject of discussion for some time. That proposed contract was a typewritten one; before its execution many interlineations and changes were made therein with a pen. These were made by an attorney to whom Vincent had gone for advice and with whom he was consulting relative to its terms. It also provided for the taking of such part or all of the land (lots 3 and 4)

as might be overflowed or rendered inaccessible by reason of the construction of a dam or dams and which grantors agreed to convey for $30 per acre. This contract was assigned to plaintiff. In 1910 Vincent and his wife refused to convey the land (27.21 acres) at the price agreed on in 1906 ($30 per acre) and after negotiations the price was fixed at $34 per acre and that was paid. In the original typewritten flowage contract here involved, as presented for execution, changes were made in Mr. Barton's handwriting; the price per acre for additional land was raised from $30 to $50 per acre, and a clause permitting vendors to remove and have the timber was inserted.

There was a meeting of the minds. Even if there had been a mistake of fact on the part of Vincent, he himself was to blame therefor for it could have been avoided by reasonable diligence. Caldwell v. Depew, 40 Minn. 528, 42 N. W. 479; Vallentyne v. Immigration Land Co. 95 Minn. 195, 103 N. W. 1028, 5 Ann. Cas. 212; St. Nicholas Church v. Kropp, 135 Minn. 115, 160 N. W. 500, L. R. A. 1917D, 741. For a general discussion see Baker v. Polydisky, 144 Minn. 72, 174 N. W. 526, and cases cited.

The contract with which we are here concerned specifically refers to the 27.21 acres conveyed by the warranty deed and also contains the statement: "It being intended that this flowage deed shall cover the balance of said lands" (lots 3 and 4). This express provision does away with the claim that it was understood that only 27.21 acres were to be flooded, with perhaps an acre or an acre and a half more, or the amount that might be inundated by a dam of a certain height. The evidence fails to show that there was an understanding that the dam was to be only 18 or 20 feet high; in fact the inference is all the other way.

There was a valid consideration for the execution of the contract. The contract itself acknowledges the consideration to be the sum of $5 "and other considerations in hand paid this day by the second party for the sale and conveyance of the definite portion of the real estate hereinafter referred to." Vincent stated he never saw the $5. The consideration was not simply the $5 stated to have

been paid but also the excess paid per acre for the land described in the warranty deed and the promise to pay $50 per acre for additional land instead of $30 per acre as provided in the Oberley contract. The deed and the flowage contract were contemporaneous instruments; they were part of the same transaction; one could be in whole or in part a consideration for the other. Murphy v. Anderson, 128 Minn. 106, 150 N. W. 387; Home Supply Co. Inc. v. Ostrom, 164 Minn. 99, 204 N. W. 647; Gregory Co. v. Shapiro, 125 Minn. 81, 145 N. W. 791; Lamprey v. St. P. & C. Ry. Co. 89 Minn. 187, 94 N. W. 555; 6 R. C. L. 654, 656, 677.

The court found that the flowage contract was made for a valuable consideration and was a valid and enforceable agreement; also that the flooding of the 35.46 acres was pursuant to and in accordance with the rights acquired by plaintiff under the flowage contract and that plaintiff had fully complied with all the conditions thereof.

■ There is nothing in the evidence that bears out any claim as to adverse possession. The comment of the court to that effect found in its memorandum and made a part of the order is correct. That defense of course is confined to the portions of the flooded area which lie outside of the 27.21 acres described in the warranty deed. Lots 3 and 4 consisted of three levels—the 27.21 acres, the lower level; the 35.46 acres, the second level; and the remainder, the higher level. The buildings erected by Isidore were on the latter only. The occupancy of defendants and the meager use made of the second level must be considered as permissive, under the facts found and the terms of the contract. Kelly v. Palmer, 91 Minn. 133, 97 N. W. 578; Cameron v. C. M. & St. P. Ry. Co. 60 Minn. 100, 61 N. W. 814.

■ We have carefully considered the defendants' claim that specific performance would be unconscionable and inequitable. In a proper case a court can deny specific performance on that ground, but it is manifest that here no condition exists that would warrant such denial. There is no evidence that $50 per acre was an inadequate price for the land in 1910 at the time the contract was made, or in 1912 when Isidore bought it. The flowage contract was duly

recorded, and he was charged with notice of its contents; his title was taken subject thereto, and he will receive the money deposited in court. The fact that the land was more valuable in 1925 than it was in 1910 matters not. No unforeseen circumstances arose which would make the performance of this contract harsh, much less bar the remedy here invoked. In fact, as the trial court said: "Plaintiff, relying on this flowage contract, had invested large amounts of money in building the dam, and to hold that the contract cannot be enforced would be inequitable and unjust." Pomeroy, Sp. Perf. Cont. (3 ed.) § 178. There was no abandonment of plaintiff's rights, and McDermid v. McGregor, 21 Minn. 111, cited by defendants, is not in point; there is no similarity in the two situations.

The suggestion is also made that the action is barred by the statute of limitations, but we find no substance to that claim. The area in excess of the 27.21 acres was not made certain and could not be defined before the flooding occurred; that flooding occurred the year this action was commenced. The payment of $50 per acre was not to be made and could not be made until the occurrence of the flooding. Not until then could specific performance be asked or an action be warranted therefor. 1 Wood, Limitations, § 119, p. 629; 37 C. J. 807, et seq; Lewis v. Prendergast, 39 Minn. 301, 39 N. W. 802. There was no breach of a condition subsequent. Under the rule relative to the weight to be given findings of fact made by a court trying a case without a jury, the findings here are controlling. 1 Dunnell, Minn. Dig. (2 ed.) § 411; Bond v. Stryker, 73 Minn. 265, 76 N. W. 26. We have carefully examined all points made by defendants and the authorities cited and have reached the conclusion that the findings of fact are amply supported by the evidence and that the conclusions of law therefrom are correct.

Judgment affirmed.