MAURICE FITZGERALD *vs.* HENNEPIN COUNTY CATHOLIC BUILDING & LOAN ASS'N.  JOHN KANNAIN *vs.* SAME.  JOHN CURTIN *vs.* SAME.  SIMON LYONS *vs.* SAME.

Argued Jan. 30, 1894.  Reversed Feb. 5, 1894.

Nos. 8573, 8574, 8575, 8576.

**Contract construed.**

By-laws of defendant, fixing the terms on which a borrowing member may pay up the "loan" or "advance" before the maturity of his stock, construed.

ON APPEAL FROM TAXATION OF APPELLANT'S COSTS AND DISBURSEMENTS.

May 11, 1894.

**Cost of printing paper book in several similar appeals.**

When four cases, involving precisely the same question, are briefed and argued together as one, and by the same counsel, on records differing merely in names, dates, and amounts, counsel for appellant is bound to ask the court to dispense with a paper book in each case, and costs will be allowed appellant for only one paper book.

Appeal by defendant, the Hennepin County Catholic Building and Loan Association, from a judgment of the District Court of Hennepin County, *Henry G. Hicks,* J., entered May 31, 1893.

This action was brought by Maurice Fitzgerald, plaintiff, under 1878 G. S. ch. 75, § 2, to determine the adverse claim of defendant

to a lien upon lot five (5) in block (4) in Wolford, Sidle & Reid's Addition to St. Anthony.   Defendant answered that it held an unpaid mortgage on the lot nominally for $1,600, given to it April 28, 1884, by plaintiff and wife, to secure the repayment of $775.20 loaned by it to him that day, and interest on it and on the premium bid by him for the loan.   He was a member of the association. The facts were all agreed upon by stipulation and a copy of the mortgage and of defendant's articles of incorporation and of its bylaws and their amendments was attached.   The question of their construction was submitted to the trial court.   The plaintiff had paid in monthly installments $1,315.80 and he claimed that under the writings the premium bid by him bore no interest and that he had overpaid the incumbrance.   He asked to have the lien removed of record.   The defendant contended that the premium bore interest as well as the sum loaned.   The trial court held with plaintiff and ordered the defendant to discharge the mortgage.   Judgment was so entered and defendant appeals.   The paper book contained fifty printed pages.   Three other similar cases were brought, tried, appealed and argued here at the same time, and each involved the same question and were similarly determined.

*Gallagher & Kinnane,* for appellant.

*T. E. Byrnes,* for respondent.

MITCHELL, J.   As this case was submitted on the agreed statement of facts, which constitutes the findings of the court, the only question is whether the findings of fact justified the conclusions of law.

There is nothing in plaintiff's contention that defendant is not a building society, and hence not authorized to take a premium for a preference or priority of loans.   It is true that building associations are the creatures of statute.   It is also true that 1878 G. S. ch. 34, Title 2, under which defendant was organized, does not define or outline the powers of building associations.   But the general character and purposes of such associations have been so long a matter of common knowledge that the term "building society" has acquired a well-defined meaning.   The statute referred to authorizes the formation of "building associations," and also provides that any premium for preference or priority taken by any mutual building association for any loan of its funds shall not be deemed

interest within the meaning of any law of this state, nor shall any excess of such premiums over any rate of interest permitted by the laws of this state be deemed or held to be usury.   This clearly authorizes the formation of what have long been known as "building societies."   The articles of association and by-laws of the defendant show that it is a "mutual building society," as that term is commonly understood, although adopting some details for carrying out the scheme that may be peculiar to itself.

In order to determine whether plaintiff's mortgage has been paid in full, or, if not, how much remains to be paid in case he desires to settle up and obtain a release of his property, it is necessary to examine and construe the provisions of by-laws of the association on that subject.

It is now very common for building societies to make provision for members withdrawing, and for borrowing members paying back the "loan" or "advance," if they desire, before the maturity of their stock.   In the absence of any statute on the subject, it is competent for the association itself in its articles or by-laws to fix the terms on which this may be done.   Of course, in advance of a settlement and accounting on the maturity of the stock or termination of the association it can never be determined with exactness what a member's stock is actually worth.   Hence it is usual to adopt some fixed basis for settlement with the retiring member or paying borrower which, from experience, the association has found will approximate exact justice, and at the same time be on the safe side for the association.   This is just what we think the association has provided for by the amendments to its by-laws, which, so far as relate to borrowing members who desire to pay up before maturity of their stock, are as follows:

"*First*. Resolved, that we adopt nine years for a basis, instead of eight.

"*Fourth*. Resolved, that in settling with members desirous of paying back their loans they be charged with total amount of loan and premium, and credited with one-ninth of the premium for each whole unexpired year, up to the ninth year, together with dues and interest, or profit on said dues, as the case may be.

"*Fifth*. Resolved, that a rebate of one-ninth of the premium be allowed to borrowing members for each year expired of the series

in which they loan; and that said rebate, instead of being deducted from the bonus as heretofore, be placed to the credit of said members until said series matures, or loan paid back."

These by-laws are not very happily worded, but it seems to us clear that the plan adopted for settling with a borrowing member proceeds upon the basis that time earns the "premium" at the rate of one-ninth each full year.

But it also seems to us that in balancing accounts interest must be charged on all amounts of such premiums not thus earned, otherwise the payment of a premium for a loan would amount to mere bookkeeping.  Our view is that in the settlement the borrower should be charged interest during the first year on the whole premium, during the second year on eight-ninths, during the third year on seven-ninths, and so on.  If it had run the full nine years, of course the interest with which he should be thus charged would just equal interest on one-half premium for the full nine years.

Of course, the interest should be computed at the rate at which, and from the date when, the loan was made.  To illustrate:  Suppose this loan had run exactly nine years, then the basis of settlement would be as follows:

Interest on amount actually loaned, ($775.20,) and on half the premium
($412.40) for nine years at 6 per cent............................  $  641 10
To this add amount actually loaned................................     775 20

Total amount with which the borrower is to be charged.............  $1,416 30
Less amount paid as found by the court............................   1,315 80

    Balance due April 28, 1893...................................  $  100 50

It follows that, according to this method of calculation, plaintiff's mortgage was not paid in full, and hence that he was not entitled to the relief demanded in his complaint; but, as it was stipulated that the pleadings should be deemed amended so as to conform to the stipulated facts, we see no reason why this may not stand as an action for an adjudication as to the terms on which plaintiff is entitled to pay up and have his mortgage discharged.  Cause remanded, with directions to the trial court to amend its conclusions of law, and order for judgment in accordance with this opinion.

The cases of John Kannain, John Curtin, and Simon Lyons against the same defendant involve the same question, the only difference

being as to the dates and amounts, and the same direction is made in each of these cases.

(Opinion published 57 N. W. Rep. 1066.)

May 11, 1894.

PER CURIAM. Ordered, that the defendant be only allowed $40 for printing one paper book in these four cases,—$10, or one-fourth thereof, to be taxed in each case,—and that in all other respects the taxation of the clerk be affirmed.

Memorandum: All four of these cases involved precisely the same question, viz. the proper construction of defendant's articles of association and by-laws as to the terms upon which a "borrowing member" was entitled to pay up and have his mortgage released before the maturity of his stock. Except as to names, dates, and amounts, the records were substantially the same; the cases were all briefed and argued together as one, and by the same counsel; and there was no possible use of printing more than one paper book. If the rules of court technically required more, it was an affirmative duty, which counsel for appellant owed to both his own client and the opposite parties, to ask the court that the rule be dispensed with. The printing of four paper books could serve no purpose except to increase costs.

(Opinion published 59 N. W. Rep. 191.)