PETER McDONOUGH v. HENNEPIN COUNTY CATHOLIC BUILDING AND LOAN ASSOCIATION.[1]

CATHERINE HUGHES v. SAME.

July 15, 1895.

Nos. 9485–9484—(317–322).

**Building and Loan Association—Construction of By-Laws.**

The by-laws of a mutual building and loan association were ambiguous, and of doubtful meaning; but the association and its members had always, by a uniform and well-understood course of dealing, given a practical construction to these by-laws. *Held*, as applied to contracts entered into between the association and its members during such course of dealing, such construction of the by-laws must control.

[1] Reported in 64 N. W. 106.

Two cases against the same defendant in the district court for Hennepin county.

In the McDonough case, defendant appealed from an order of Jamison, J., denying a motion for a new trial.    Reversed.

*McHale & Abell* and *Benj. Davenport*, for appellant.

*Louis Tressman*, for respondent.

In the Hughes case, plaintiff appealed from a judgment in favor of defendant, entered in pursuance of the findings and order of Belden, J.   Affirmed.

*Day & Enches* and *B. Davenport*, for appellant.

*McHale & Abell*, for respondent.

CANTY, J.    Defendant is a building and loan association, of which plaintiff is a member, holding 15 shares of its stock.   His stock was issued in 1884 to other parties, who transferred it to plaintiff in 1885.    Each share is of the par value of $200, and is paid for by paying to the association $1.05 per month from the time the series is issued until the share matures, or becomes, through the accumulation of dues, interest, and other profits of the association, of the value of $200.    The by-laws of the association provide that its funds shall be loaned to its members at a premium of not less than $80 per share, and shall be so loaned to the member who bids the highest amount of premium in excess of $80 per share, and furnishes reasonable security.    The amount of premium so bid was deducted from the par value of the share, and the balance was the amount per share actually loaned.    It also appears from the evidence that by the custom and usage of the association the borrower was required to repay the amount loaned and the premium bid, with 6 per cent. interest on the amount loaned, but no interest on the premium bid.    If the borrower kept up all the payments, the loan was carried until it was paid back, or the stock matured, and thereby repaid the loan.    This much of the method of doing business can hardly be said to be prescribed by the by-laws, which are so crude and unintelligible that, when construed by themselves, it is exceedingly difficult to give some parts of them any reasonable meaning. In 1885 plaintiff procured from defendant, on 14 shares of his stock, a loan for which he bid $85 per share, amounting to $1,190 on the 14 shares.    This, deducted from $2,800, the par value of the 14

shares, leaves $1,610, which was the amount of the loan. In 1886 plaintiff procured a loan on his other share, for which he bid a premium of $100, leaving $100 as the amount of the loan.

This action was brought to reform the bond and mortgage given for each loan, so that they should not provide for the payment of either the premium bid or interest thereon, or the payment of anything but the amount actually loaned and interest thereon at the rate of 6 per cent. per annum, and to declare both mortgages paid and satisfied. Both mortgages were on the same property. The cause was tried by the court without a jury. The bond and mortgage given for the first loan recited that the loan was made on the 15 shares of plaintiff's stock, and was for a larger amount than was in fact loaned. Defendant stipulated that this bond and mortgage should be reformed so as to recite the true amount loaned and the true amount of premium bid. By the bond and mortgage given for each loan plaintiff agreed to pay interest at the rate of 6 per cent. per annum on the premium bid as well as on the amount loaned. It appeared by the evidence that plaintiff never paid any interest on the premium, and never was required by the defendant to do so. Defendant stipulated that there was a mistake in drawing these instruments so as to require payment of interest on the premium, and that they should be reformed so as to provide for payment of interest only on the sum actually loaned, not on the premium bid. The first of plaintiff's loans had run more than nine years, and the second had run nearly that length of time.

On the authority of Fitzgerald v. Hennepin County C. B. & L. Ass'n, 56 Minn. 424, 57 N. W. 1066, and 59 N. W. 191, plaintiff contends that under the by-laws time has earned the premium, and he can be required to pay only the sum actually loaned and 6 per cent. interest thereon, and that the mortgage should be reformed accordingly. Defendant contends that this is not the proper interpretation of the by-laws and that, if the by-laws are ambiguous and of doubtful meaning in respect to this matter, they are explained by the evidence of the uniform custom and usage of the association and its members, and that such usage and custom should control. This is the real controversy in the case.

The trial court held with plaintiff on this controversy, and ordered the bonds and mortgages reformed accordingly. It appeared

by the undisputed evidence that plaintiff had paid sufficient to sat-
isfy both mortgages when so reformed, without claiming any part of
the $60.60 per share of the accrued profits of the association, which
defendant conceded belonged to him. Defendant contended that
plaintiff should pay the premium bid without interest, and that,
after crediting him with his part of the accrued profits, there was at
the time of trial due from him to it a balance of $283.57. The court
found that both mortgages, as so reformed, were fully paid and sat-
isfied, and ordered judgment that they be so reformed, and declared
paid and satisfied. From an order denying its motion for a new
trial, defendant appeals.

All of the parts of the by-laws which it is necessary here to con-
sider are as follows: Section 2 of article 2 provides: "Every mem-
ber in good standing shall * * * have the right, * * * to
bid at all sales, and if the highest bidder (upon giving real-estate se-
curity to the satisfaction of the managers), to receive the sum of two
hundred dollars, less the premium, for every share previously sub-
scribed for, cr so much thereof as he may find necessary. * * *"
Section 3 of article 3 provides: "Interest at the rate of 6 per cent.
per annum on the amount received, payable monthly in advance,
shall commence from the acceptance by the manager of the security
offered. * * *" The following amendments to these by-laws
were made in 1881: "(1) Resolved, that we adopt nine years as a
basis instead of eight. (2) Resolved, that hereafter our annual re-
port be made out giving the cash value of stock, instead of a book
or fictitious value. (3) Resolved, that withdrawing members who
shall not have borrowed, be allowed seven (7) per cent. interest on
their dues from the twelfth to the thirty-sixth monthly meeting, and
after the thirty-sixth monthly meeting, they be allowed the net
earnings less four per cent. of the net earnings. (4) Resolved, that
in settling with members desirous of paying back their loans, they
be charged with the total amount of loan and premium, and credited
with one-ninth of the premium for each whole unexpired year, up to
the ninth year, together with dues and interest, or profits on said
dues, as the case may be. (5) Resolved, that a rebate of one-ninth
of the premium be allowed to borrowing members, for each year ex-
pired of the series in which they loan, and that said rebate, instead
of being deducted from the bonus, as heretofore, be placed to the

credit of said members until said series matures, or loan paid back."

The original by-laws in no way referred to a basis of eight years, and there is nothing in either the original or amended by-laws, except as above quoted, by which it can be determined what is meant by a basis of eight years or of nine years, referred to in amendment 1, or which throws any light on the meaning of amendments 4 and 5. Having nothing before us in the Fitzgerald Case but these by-laws, and a bond and mortgage which provided for the payment of interest on the premium bid as well as on the money loaned (as did the bonds and mortgage in this case), we held that under amendment 5 "time earned the premium" at the rate of one-ninth for each full year of the loan, but that the borrower should be charged with interest each year on all of the premium not so earned. But from the evidence in the case at bar it appears that the association and its members, by their uniform course of dealing, have always construed amendments 4 and 5 to mean that the borrower must pay the premium, without interest, at the rate of one-ninth of the premium for each whole year or fraction thereof for which he has the loan, and that he must be credited with one-ninth of the premium for each of the whole years, not exceeding nine, during which he does not have the loan; that amendment 5 applies to cases where the borrower has held his stock for a year or more before he takes a loan, in which case he is credited with one-ninth of the premium for each full year during which he so held his stock before he took the loan; and that amendment 4 applies to cases where the borrower pays back his loan a year or more before the end of the nine years, in which case he is credited with one-ninth of the premium for each full year from the time he so pays back the loan to the end of the nine years. Thus, if his stock was two years old when he took his loan, and he held it four years, and paid it back, he would be required to pay four-ninths of the premium bid, and would be credited with five-ninths of the same,—two-ninths for the time before he took the loan and three-ninths for the time after he paid it back. This evidence of the custom and course of dealing between the association and its members is wholly uncontradicted, and plaintiff does not pretend that he did not know and fully understand that such was the uniform custom and course of dealing. Under these

circumstances, the findings and order for judgment are against the evidence.

When an ordinary contract between two individuals is ambiguous, the practical construction of it by the course of dealing under it between the parties will control. First Nat. Bank v. Jagger, 41 Minn. 308, 43 N. W. 70. But that principle has a much stronger application to a case like this. These amendments to the by-laws were ambiguous, but the parties have, by their uniform course of dealing under them, given them a practical construction which must control. Neither are we prepared to say that, even if such uniform, well-defined, and well-understood course of dealing was directly in conflict with by-laws that were not ambiguous, it would not supersede or control the by-laws, at least as against an action to reform a contract which was, and which the parties understood to be, in accord with such course of dealing, though in conflict with such by-laws. But it is not necessary to decide that question in this case.

The contention that defendant is not a mutual building and loan association is disposed of in the Fitzgerald Case.

The order appealed from is reversed, and a new trial granted.

The case of Hughes v. Hennepin County C. B. & L. Ass'n was argued at the same time, involves the same question, and the evidence of the course of dealing between the association and its members is more full and complete. In this case the trial court held that such course of dealing gave a practical construction to said amendments to the by-laws, which construction should control, and decided the case for the defendant. From the judgment entered therein plaintiff appeals. For the reasons stated in the above opinion in the case of McDonough v. Hennepin County C. B. & L. Ass'n, the judgment is affirmed.