## LAKESIDE RAILWAY COMPANY v. DULUTH STREET RAILWAY COMPANY.

November 22, 1899.

Nos. 11,781—(128).

### Contract to Operate Street Railway.

Plaintiff built an extension to defendant's street-car line, and furnished cars for the same; and defendant, by means of its own power house and power plant, operates such extension in connection with its own line. By the terms of the contract therefor, plaintiff agreed to pay the actual cost of operating such extension, and of maintaining the same and keeping it in repair. The contract is construed, and *held*, plaintiff is not required to remunerate defendant for any part of its loss caused by the depreciation of its power house, power plant, or car houses.

### Same—Interest on Investment in Equipment.

The contract provides that plaintiff shall pay to defendant "a fair proportion of the interest of the investment" of defendant "in its power house and its equipment, and in car houses and equipment." *Held*, plaintiff should pay a reasonable interest or income on the investment, and not the legal rate of seven per cent. per annum, under G. S. 1894, § 2212, on the indebtedness of defendant incurred in constructing such property, nor the rate of interest which defendant then paid or is now paying on any such indebtedness.

Action in the district court for St. Louis county to recover $12,-416.52 and interest and for an accounting under a contract. The case was tried before Moer, J., who found that plaintiff was entitled to recover $13,776.07; and from an order denying a motion for a new trial, and from the judgment, defendant appealed. Affirmed.

*Billson, Congdon & Dickinson,* for appellant.

*J. L. Washburn* and *W. D. Bailey,* for respondent.

78 M—9

CANTY, J.[1]

In 1892 the defendant, the Duluth Street Railway Company, operated a system of street railways in the city of Duluth, and one of its lines extended on East Superior street from the business center of the city to Twenty-Second avenue East, and there terminated. On September 1, of that year, defendant entered into a written agreement with the plaintiff, the Lakeside Railway Company, by the terms of which the latter agreed to construct an extension of such line from Twenty-Second avenue East to Lakeside (then a suburban village, and now a part of the city of Duluth), and further agreed:

"(2) That it will furnish sufficient first-class car equipment for said projected railway line, based on the number of cars run per day from Fifth avenue West, in the city of Duluth, to the Eastern terminus of its line. * * * (4) that it will pay to said party of the first part [defendant] the expense of maintaining, operating, repairing, and renewing said plant and equipment as hereinafter provided, monthly, within 10 days after the statement of the same shall have been rendered and delivered."

In consideration thereof, defendant agreed to commence to operate such extension as soon as the same was completed, and further agreed:

"(3) That it will maintain and operate said line of railway at the actual cost thereof, including, among others, the following items: 1st, the cost of operating the cars from 5th avenue West, in the city of Duluth, to Park avenue, in the city of Lakeside; 2nd, the cost of maintaining, repairing, replacing, operating, and renewing the roadway, tracks, ties, poles, wires, cars, motors, and equipment owned or provided by the party of the second part; * * * 4th, a fair proportion of the interest of the investment of party of the first part in its power house and its equipment, and in car houses and equipment. It being the intention of the parties hereto that the tracks, ties, wires, and poles east of 22nd avenue East, and cars, motors, and equipment of every nature, constituting the entire plant of said second party, shall at all times be kept and maintained by said first party in like good order, condition, and repair, including renewals of cars and motors, which it maintains and requires on its own suburban lines of similar character, and that the cost thereof shall be taken and considered as part of the expense of maintaining said line east of 22nd avenue East. That it will keep an accurate and

[1] BUCK, J., absent.

detailed account of the items of such cost of maintenance of way and equipment, and will furnish to said party of the second part a detailed statement of such cost and expense on or about the fifth of each and every month. And, in case any of such statements shall show a cost greater than said second party shall deem fair and equitable, then such cost shall be determined by arbitration in the same manner hereinafter provided for determining value on the purchase of said railway. That it will make daily reports to the Lakeside Railway Company for the receipts for passengers' fares on said line, which receipts shall be determined by the following method: All passengers in each and every car of plaintiff going east shall be counted at 22nd avenue East by the conductor, who shall thereupon make a note of the number of passengers then in the car, and the Lakeside Railway Company shall be credited with the number of paying passengers so remaining in the car. All fares collected between said 22nd avenue East and Park avenue, going both ways, shall be credited to the Lakeside Railway Company, and on each and every car going from Park avenue west, the fares of all passengers shall be collected and registered on or before reaching 22nd avenue East; it being the intention of the parties hereto to give the Lakeside Railway Company credit for all fares collected on its cars from passengers destined to any point on its lines, or collected from passengers received at any point on its line,—that is, between 22nd avenue East, in the city of Duluth, and Park avenue, in the city of Lakeside,—and that it will make monthly settlements of the receipts of each month on the tenth day of the month following."

It was further provided that the contract should continue in force until defendant should purchase such extension under the terms and conditions stipulated. This is all of the contract that we deem it necessary to recite. Plaintiff completed the extension, and defendant commenced to operate the same on December 19, 1892, and has operated the same ever since. In February, 1895, an accounting and settlement were had between the parties covering the time up to the end of the year 1894; and this action was brought in January, 1898, for an accounting for the years 1895, 1896, and 1897. On the trial the court, sitting without a jury, found for plaintiff, and ordered judgment in its favor for the sum of $13,776.-07. Defendant appeals from an order denying a new trial, and also from the judgment.

1. Before the parties entered into the aforesaid contract, defendant had constructed an electric power house for the operation of street cars, and a car house for the storage and repair of cars, and

had equipped the power house and the car house with a large amount of machinery and appliances for use in operating, repairing, and storing cars. Under said paragraph 5 of the contract, defendant sought on the trial to be allowed for a proper portion of its loss caused by the depreciation of this power, storage, and repair plant, as part of the cost of operating the cars under the contract. The trial court refused to allow defendant to charge or recoup against plaintiff any part of the loss covered by such depreciation, and appellant assigns this refusal as error.

Under the fourth subdivision of said paragraph 5 of the contract, the court did allow defendant a portion of the interest on the investment in such power house, car house, and plant, and also allowed to defendant the same portion of the insurance and taxes paid by defendant on the same. But appellant contends that under the contract it should also have been allowed the same portion of such loss resulting from the depreciation of its plant. We cannot so hold. True, by reason of the words "among others," occurring in said fifth paragraph, the defendant may be entitled to recover other items of the cost of maintaining and operating the extension besides those items thereinafter specially enumerated. But, in our opinion, a fair construction of the contract does not warrant the claim that the parties ever contemplated that defendant should be allowed any portion of the loss by depreciation of its own plant as a part of the cost of operating such extension. Defendant agreed to maintain and operate the extension at "actual cost," and it can hardly be held that this term includes such item of depreciation of defendant's own property.

But, in any event, the most that can be said in appellant's favor is that the contract is ambiguous on this point, and therefore the practical construction which the parties themselves placed on the contract for more than three years after the extension was completed should control. See McDonough v. Hennepin County C. B. & L. Assn., 62 Minn. 122, 64 N. W. 106; First National Bank v. Jagger, 41 Minn. 308, 43 N. W. 70. The court finds that the defendant, in rendering its account from time to time, made no charge or claim for such depreciation until January, 1896, when it rendered its account for the year 1895.

2. It will be observed that said fourth subdivision provides that plaintiff shall pay defendant "a fair proportion of the interest of the investment" of defendant "in its power house and its equipment, and in car houses and equipment." In determining what plaintiff should pay under this provision of the contract, the trial court found that defendant was paying interest at the rate of six per cent. per annum on the indebtedness incurred in constructing the plant, and allowed interest on such investment at the same rate. Appellant attacks this finding on two grounds: First, that the rate of interest should be that provided by G. S. 1894, § 2212, to wit, seven per cent. per annum; and, second, that the court erred in ascertaining and determining the rate of interest which appellant was paying, and the rate which it had been paying.

(1) Section 2212 provides:

"Interest for any legal indebtedness shall be at the rate of seven dollars upon one hundred dollars for a year, unless a different rate is contracted for in writing."

There is in this case no "legal indebtedness," and therefore the case does not come within that statute. Neither is it a case where, in interpreting the contract, the court should adopt the analogy of the statute.

(2) Neither can we hold that the language of the contract means that plaintiff shall pay a fair proportion of the interest on the indebtedness which defendant happens to owe on its power plant or its street-railway plant. The word "indebtedness" is not used in said fourth subdivision, but the word "investment" is; and, while this provision of the contract is loosely drawn and ambiguous, we can hardly construe the word "investment" as meaning "indebtedness." At the time the contract was made, defendant's indebtedness was not funded in long-time bonds, but at that time it was a floating indebtedness, which was evidenced by promissory notes indorsed by certain of the stockholders, and drawing interest at the rate of seven per cent. per annum. These notes were afterwards funded into 30-year bonds. But the indebtedness might have been paid, or the bonds might have been foreclosed, and the plant of defendant might have been acquired by the purchaser at

the foreclosure sale.    In either case there would be no indebtedness on which the plaintiff could pay "a fair proportion of the interest," but should then pay on the "investment." Again, suppose the indebtedness had been partly paid; would plaintiff be liable to pay only "a fair proportion of the interest" on the balance? In our opinion, the plaintiff should still pay such interest on the whole investment.    Neither can we hold that, because defendant was paying seven per cent. on its indebtedness when the contract was made, therefore plaintiff must pay seven per cent. during the whole time the contract is to run.    Neither can we hold that plaintiff should pay the same rate of interest which defendant is paying.    Defendant may not be owing any indebtedness or paying any interest at all.    Again, defendant might become of doubtful responsibility, and unable to give anything but doubtful security, and might for that reason be obliged to contract to pay ten per cent. per annum on its indebtedness, when money could be borrowed on good security for three per cent. per annum.    Under such circumstances, would plaintiff be liable to pay ten per cent. to defendant? Conceding that plaintiff could make a contract which would bind it to pay any amount of interest which plaintiff saw fit to pay, or was by its impecunious condition obliged to pay, still the intention to be so bound should be plainly expressed.    We cannot hold that it is so expressed in this case.

In our opinion the proper interpretation of this contract is that plaintiff shall pay a reasonable rate of interest or income on the proper portion of defendant's investment.    Then the points made by appellant are not well taken, and the order and the judgment appealed from should be affirmed.    So ordered.