FRANK H. MURRAY and Another v. WALLACE C. NICKERSON and Others.[1]

July 10, 1903.

Nos. 13,440—(148).

**Construction of Contract.**

In this, an action for specific performance of an alleged contract to convey land, the contract is construed with reference to its practical construction by the parties, and *held* to be an executory contract for the future conveyance of land.

**Tender.**

The vendee tendered payment of the sum due on the contract within the time limited in the notice by the vendor of his intention to cancel the contract. *Held*, distinguishing Dunn v. Hunt, 63 Minn. 484, that it was not necessary to keep the tender good and bring the money into court.

**Finding—Damages.**

The trial court found that the vendor, who owned only an undivided half of the land, had no authority to make the contract for the sale of his cotenant's interest. *Held*, that the finding is sustained by the evi-

---

[1] Reported in 95 N. W. 898.

dence, and that the plaintiffs are not entitled to specific performance of the contract, but are entitled to damages against the vendor for a breach of the contract.

Appeal by plaintiffs from an order of the district court for Pine county, Crosby, J., denying a motion for a new trial. Modified.

*Uri L. Lamprey* and *Stevens, O'Brien, Cole & Albrecht,* for appellants.

*J. C. Tarbox* and *H. C. Belden,* for respondents Nickerson.

*Charles Bechoefer* and *Durment & Moore,* for respondents Slimmer and Thomas.

START, C. J.

This is an appeal by the plaintiffs from an order of the district court of the county of Pine denying their motion for a new trial in an action by them to enforce specific performance of an alleged executory contract to convey land.

The trial court found that on February 16, 1901, the defendants Wallace C. Nickerson and Ernest A. Nickerson were owners as tenants in common of the land here in controversy—some eighty-five hundred acres—and particularly described in the complaint. On that day Wallace C. Nickerson and the plaintiff Murray entered into a written contract with reference to the land, the here material terms of which were substantially these:

> Received of Frank Murray two hundred dollars as earnest money and part payment of the purchase price of the following described real estate situate in Pine county, Minnesota [here follows a description of the land], which I have sold to Frank Murray for the agreed price of one and one-half dollars an acre for each and every acre thereof. An abstract of title thereto shall be furnished to Murray and he shall have ten days thereafter within which to examine the same. If the title to the lands shall not appear by the abstract to be good in Wallace C. Nickerson and Ernest A. Nickerson, then Murray shall have the right, at his election, to either cancel this contract of sale and have refunded to him the $200 paid hereon, or to complete the sale by paying the money as the purchase price thereof and receiving the deed therefor as hereinafter provided, in which case

his remedies for any defects of title shall be restricted to the covenants of warranty in the deed to be executed to him therefor. Failure by Murray to give to Wallace C. Nickerson notice of election to cancel the contract of sale within ten days shall be deemed an election by him to accept a deed of the lands with the title thereto as it shall then appear. Payment shall be made for the lands as follows, to wit: One-half of the entire amount within thirty days from the delivery of an abstract thereto, and the balance thereof, with interest thereon at the rate of eight per cent. per annum from the date of the delivery of abstract, on or before one year after its delivery, payment to be made at the 1st National Bank in the City of Minneapolis, Wallace C. Nickerson to cause a warranty deed of the lands [subject to certain exceptions and reservations] by himself and wife and Ernest A. Nickerson and his wife to be deposited with the bank in escrow for delivery to Murray on his making full payment of the purchase price of the lands. The payment of two hundred dollars hereby acknowledged shall be considered as payment for the expense of Nickerson in preparing an abstract of title to the lands and the delay in sale of same and other expenses in making this contract and if Murray shall fail to complete the trade and make payment for the first half of the purchase price for any other reason than failure of title to any of the lands shall be forfeited to Wallace C. Nickerson and shall not be considered as vesting in him any interest in the lands nor shall any such interest be considered as granted hereunder till the payment of one-half of the purchase price, but if Murray shall pay one-half of the purchase price of the lands then the $200 shall be considered as a part thereof.

Should default be made in the payment of the several sums of money, or any or either of them, or any part thereof, or in any of the covenants herein to be by the party of the second part [Murray] kept or performed, then this agreement is to be void, at the election of Wallace C. Nickerson, time being of the essence of this agreement. And in case of default by Murray, in whole or in part, in any or either of the covenants of this agreement to be by him kept and performed, he hereby agrees

> upon demand of said Wallace C. Nickerson quietly and peaceably to surrender to him possession of the premises and every part thereof.

This contract was executed by Wallace C. Nickerson and Frank Murray alone. The $200 earnest money was paid on the execution of the contract. Wallace C. Nickerson had no authority or power to sell the interest of Ernest A. Nickerson and his wife in the lands, but soon after the execution of the contract he was informed by letter of its execution, inclosing therewith a deed for him to execute for the purpose of carrying out the contract. Ernest A. Nickerson executed the deed, leaving the date thereof and the name of the grantee therein blank, and forwarded it to Wallace C. Nickerson, who destroyed it. Wallace C. Nickerson never deposited in the bank a deed of the lands to Murray. Nor did Murray at any time pay any money to Nickerson or to the bank for the lands, except the $200.

On June 27, 1901, Wallace C. Nickerson caused to be served on Murray this notice:

> "To Frank Murray, Esq.: Take notice that default has occurred in the terms and conditions to be by you done and performed of that certain contract executed by you, and the undersigned, dated February 16th, 1901, for the sale by me to you of certain lands therein described situated in Pine county, Minnesota:
>
> "Now therefore, the undersigned, without waiving any of his rights by virtue of the defaults that have already taken place under said contract, does hereby notify you that said contract will be cancelled and terminated on the 27th day of July, 1901, unless on or before said last-named date you pay the sum provided to be paid within thirty days after the delivery of the abstract provided to be furnished by me to you the same being seventy-five cents an acre for each and every acre of land described in said abstract."

Thereafter, and on July 24, 1901, Murray tendered to the bank the sum of $6,310.07, as the first payment on the purchase price of the lands, as provided by the contract, which was refused; and on August

22, 1901, he tendered to the bank the amount of the second payment for the lands as stipulated in the contract, which was also refused. The money to make these tenders was furnished by the plaintiff George G. Benz, to whom Murray had assigned an interest in the contract. The money so tendered has not been kept apart or brought into court, but the plaintiff Benz has been at all times able, willing, and ready to make the payments for the land in accordance with the contract. On August 28, 1901, the defendants Wallace C. and Ernest A. Nickerson, with their respective wives, made and delivered a warranty deed of the land to the defendants Abraham Slimmer and Lane J. Thomas, who paid a valuable consideration therefor, but with notice of the plaintiffs' contract, except that they paid $500 of the purchase price before they had such notice. The trial court also made findings of fact with reference to the plaintiff Murray's financial responsibility, and to the effect that he entered into the contract as a speculative venture.

The plaintiffs and the defendant Wallace C. Nickerson entered into, with reference to the trial of the action, as appears from the record herein, this stipulation:

> "Stipulated in above-entitled action that if plaintiffs, or either of them, are by the final determination of said action given the lands involved therein, then plaintiffs, and each of them, shall recover no damages or costs against the defendants Nickerson, or either of them, but that in case, in said action, it shall be finally determined that plaintiffs, and each of them, are not entitled to specific performance as to one-half or more of said lands, but are entitled to recover damages against defendants Nickerson, or either of them, in place thereof, then such damages shall be assessed at one thousand dollars, without costs, and the court shall so find, and this stipulation shall be all the evidence that shall be required on the subject of damages, and that otherwise the plaintiffs, and each of them, shall take nothing as to said defendants Nickerson."

On the argument of the case in this court, counsel for the plaintiffs stated to the court, in substance, that the plaintiffs were not entitled to specific performance, and would not insist on specific performance, of any part or interest in the land, unless they were so entitled to the

whole of the land, but, in case it should be held that they were not entitled to the whole of the land, they insisted on their damages pursuant to the stipulation. It is necessary, in our view of the record, to pass upon only three general questions:

1. The first relates to the construction of the contract between the plaintiff Murray and the defendant Wallace C. Nickerson. The defendants claim that it is a mere option, giving the vendee the right to purchase the land, if he so elected, on the terms specified, at any time within thirty days next after the delivery of the abstract, and not afterwards, and further that, the vendee having failed to elect to purchase within the time limited, all his rights and equities in the land by virtue of the contract became and were absolutely extinguished, without any act on the part of the vendor. If this is the construction to be given to the contract, it follows that the conclusion is correct, and the case would be ruled by Joslyn v. Schwend, 85 Minn. 130, 88 N. W. 410. The plaintiffs claim that the contract is an executory contract for the future conveyance of real estate within the meaning of Laws 1897, p. 431 (c. 223) and that the vendee was entitled to thirty days after written notice of the vendors' intention to cancel the contract in which to tender performance.

The contract is ambiguous in its terms, but in such cases the practical construction of the parties thereto will be considered, in determining their rights, and be held to be controlling. First Nat. Bank v. Jagger, 41 Minn. 308, 43 N. W. 70; O'Dea v. City of Winona, 41 Minn. 424, 43 N. W. 97; McDonough v. Hennepin Co. C. B. & L. Assn., 62 Minn. 122, 64 N. W. 106; Walters v. Minneapolis, St. P. & S. Ste. M. Ry. Co., 76 Minn. 506, 79 N. W. 516; Lakeside Ry. Co. v. Duluth St. Ry. Co., 78 Minn. 13, 80 N. W. 831. Now, the parties to the contract gave a practical construction to it—the vendor, by serving the notice of the cancellation of the contract, as required by the statute; and the vendee, by tendering performance within the time limited in the notice. The vendor cannot avoid the effect of the notice as a practical construction of the contract on the ground that he intended that it should be given effect only in case it should be determined that the contract was not simply an option. He could not thus palter in a double sense, and, after inviting and requiring the vendee, by the notice, to perform the contract within the time limited in the notice, and

after the vendee incurred the trouble and expense of tendering performance, turn around and say to him, in effect, "I did not mean anything by the notice, for you had no rights under your contract when it was given." The contract is then to be read and construed with reference to the practical construction given to it by the parties. So reading and construing the contract, a majority of the court are of the opinion that it is an executory contract for the future conveyance of land, within the meaning of the statute. We so hold. Lamprey v. St. Paul & Chicago Ry. Co., 89 Minn. 187, 94 N. W. 555.

2. The second question relates to the sufficiency of the tenders, and their effect. It is the claim of the defendants that, because the tenders were not kept good and the money brought into court, they were ineffectual to save any rights which the vendee and his assignee had in the land by virtue of his contract. The trial court found that the plaintiff Benz was ready, willing, and able to make the payments on the land at all times after they were tendered.

The tenders of the amount due on the land by virtue of the contract, and the refusal of the tenders, put the vendor in default, and it was not necessary for the plaintiffs to bring the money into court. All they were required to do after the tenders were refused, and their rights in the land fixed thereby, was to be ready and willing to pay when advised that the tenders would be accepted. It is enough that they were ready and willing to perform, and tendered performance in their complaint. Minneapolis, St. P. & S. Ste. M. Ry. Co. v. Chisholm, 55 Minn. 374, 57 N. W. 63; Lamprey v. St. Paul & C. Ry. Co., 86 Minn. 509, 516, 91 N. W. 29.

The case of Dunn v. Hunt, 63 Minn. 484, 65 N. W. 948, relied upon by the defendants, is not in point. That was a case of a tender of the amount required to redeem land from a mortgage foreclosure sale, and it was held that the tender must be keep good, as it was the basis of an action to compel a redemption, brought after the time for redemption had expired; that is, the tender in that case created the right to maintain the action, but in this case the plaintiffs' rights were created by the contract of the parties, and, after the tenders were made and refused, their rights were the same as if the notice to make the payments had never been served.

We therefore hold that the tenders, as shown by the facts found by

the trial court, were sufficient, and whatever rights the vendee had in the land by virtue of the contract were preserved thereby.

3. The last question relates to the finding of the court that the defendant Wallace C. Nickerson had no power or authority to contract to sell the interest in the land of the defendant Ernest A. Nickerson and his wife. The plaintiffs claim that this finding is not supported by the evidence, for the reason that, if Wallace C. Nickerson was not originally authorized to sell such interest, the defendant Ernest A. Nickerson ratified the contract. The contract does not purport to be made by or on behalf of Ernest A. Nickerson. It appears on its face to be the individual contract of Wallace C. Nickerson. It was he that stated therein that he had sold the land to Frank Murray, and agreed to cause a warranty deed to be executed by himself and wife and Ernest A. Nickerson and wife to Murray, and deposit it in the bank. It would seem from the contract that there was nothing for Ernest A. Nickerson to ratify; but, this aside, the only evidence tending to show a ratification of the contract is the execution of the blank deed in response to the letter from Wallace C. Nickerson, as found by the trial court. This was not sufficient to require a finding that the contract was ratified, as claimed. The finding complained of is sustained by the evidence.

4. It follows that, as to the undivided half of land owned by Ernest A. Nickerson, there cannot be a decree of specific performance of the contract against any of the defendants; and further that, upon the concession and claim made by the plaintiffs on the argument, they are not entitled to a specific performance of the contract as to any part of an interest in the land. While the concession may not be legally exact, yet a vendee is not bound to accept a part of what he contracted for, with compensation for the deficiency. 20 Enc. Pl. & Pr. 491. The plaintiffs are, however, entitled to recover in this action damages from the defendant Wallace C. Nickerson for the breach of his executory contract for the sale of the land.

It is therefore ordered that the order appealed from be, and it is, affirmed as to all of the defendants, except Wallace C. Nickerson; and as to him it is reversed, with leave to the plaintiffs to apply to the district court for a finding and assessment of their damages pursuant to the stipulation of the parties.

Order modified.