URI L. LAMPREY v. ST. PAUL & CHICAGO RAILWAY COMPANY
and Others.[1]

June 27, 1902.

Nos. 12,970, 12,971, 12,972—(115, 116, 117).

### Specific Performance—Tender—Payment into Court.

The trial court found, in this action to enforce the specific performance of a contract to convey land, that the plaintiff, at a time when his rights under the contract were in force, tendered to the defendants the amount due thereon for the balance of the purchase price of the land, and has ever since been able and willing to pay the same upon receiving a deed for the land; that the defendants refused the tender, and have ever since insisted that the plaintiff has no interest in the land, and that the contract was terminated before the tender was made. *Held*, that it is inequitable to require the plaintiff to pay the balance of the purchase price into court before the defendants give notice that they are willing to accept the money and deliver the deed for the land, or, in case such notice is not given, before the judgment determining the rights of the respective parties under the contract becomes irreversible by affirmance on appeal, or by expiration of the time limited for appealing.

### Performance of Judgment—Appeal from Order.

After the entry of judgment herein, the court, on application of the defendants, pursuant to the provisions thereof, adjudged and determined that the plaintiff had not complied with its terms. *Held*, that an appeal lies from such adjudication.

Action in the district court for Ramsey county to enforce specific performance of a contract for the sale of real estate. The case was tried before Bunn, J., who made findings of fact, and as conclusions of law found that plaintiff's rights under the contract had not been terminated; that upon his payment to defendant Sage, within thirty days after the filing of the findings, of the amount found due upon the contract, plaintiff would be entitled to judgment directing the conveyance to him of the lands involved in the action; and that in case plaintiff should fail to make such

[1] Reported in 91 N. W. 29.

payment within the time limited defendant Sage should be entitled to judgment confirming in him the title to said lands. Thereafter, on motion of defendants, the court made a further order determining that plaintiff had not made or tendered the payment within the time limited. From a judgment entered pursuant to the original findings, from the order determining plaintiff's default, and from an order denying a motion to amend the original findings and judgment, plaintiff took separate appeals. Order denying motion to amend affirmed. Judgment and supplemental order reversed, and cause remanded with instructions.

*Henry C. James,* for appellant.

*Owen Morris* and *Durment & Moore,* for respondents.

START, C. J.

This is an action to enforce specific performance of a contract to convey real estate.

The trial court found, with others not here material, substantially these facts: On February 2, 1887, the defendant railway company agreed to sell to the plaintiff one hundred thousand acres of land situate in different counties in Minnesota, and a separate written contract for the sale of the lands in each township was made, and delivered to the plaintiff by the defendant railway company and the defendant trust company; the latter having a mortgage on the lands. The lands described in all of the contracts except twenty-six of the contracts were conveyed to the plaintiff prior to January 23, 1899, and are not included in this action. But twenty-six of the contracts were in force at this date, which included some thirty thousand acres of land, which had not been conveyed to the plaintiff. All of these contracts were exactly similar in contents, terms, and conditions, except in description, number, and amount of consideration, which was in each contract as many dollars as there were acres described therein. The plaintiff paid twenty per cent. of the purchase price of the land at the time the contracts were executed, and agreed to pay the balance thereof on or before February 2, 1888, with interest thereon at the rate of seven per cent. per annum, and to pay seasonably all taxes levied upon the land. The time within which such payments were

to be made was of the essence of each contract as declared therein, and by the terms thereof the right was reserved to the vendors to declare the contract null, without any declaration of forfeiture or any other act, in case of any default on the part of the vendee.

During all the time prior to the year 1899 neither plaintiff nor defendants paid any attention to any of the provisions in the contracts of sale making time the essence of such contracts or making default in payments under such contracts work a forfeiture thereof; but, on the contrary, the parties continued during all such time to deal with each other under the contracts as if the same were in full force, the plaintiff paying on the contracts as he was able, and the defendants giving him deeds of the lands as he made payments. The plaintiff during such time paid for a small portion of the lands described in the contracts, which was accordingly deeded to him. Of the amount of purchase price for the lands described in the contracts that have not been conveyed to the plaintiff, more than $37,000, including principal and interest, was long overdue, and unpaid by plaintiff in January, 1899. At that time plaintiff had not paid the taxes on said lands for the years 1889, 1890, 1891, 1893, 1894, 1895, 1896, 1897, and 1898, and there were outstanding taxes and tax sales against said lands amounting, with interest, penalties, and costs, to about $30,000. Plaintiff has paid on account of the purchase price of the land in controversy in this action the sum of $13,304.80. Interest on the payments of this sum by plaintiff from the time when they were made, respectively, at seven per cent. per annum, amounts to the sum of $10,200.10. Plaintiff has paid for taxes, penalties, and costs on the lands in controversy in this action the sum of $14,317.97. Interest on such payments from the time when they were made, respectively, computed at seven per cent. per annum, amounts to the sum of $11,233.07.

On January 23, 1899, the defendants attempted to declare a forfeiture of the contracts by leaving at the plaintiff's usual place of abode, with a person of suitable age and discretion, then resident therein, a written notice, in which it was stated that by reason of his default in the payments to be made by him the contracts would be cancelled and terminated, to take effect on the thirty-

first day after the service of the notice upon him, exclusive of the day of such service. The notice, however, never actually came to his knowledge until shortly before July 13, 1899. When the notice came to his attention he declined to recognize its validity, and claimed that it was ineffectual to terminate his rights under the contracts. The defendants claimed otherwise. Thereupon negotiations were had between the parties, which resulted in the execution of an agreement between the parties, dated July 13, 1899, but which was not signed by the plaintiff nor delivered until August 9, 1899. This agreement, which is referred to in the record as "Exhibit B," after reciting the making of the contracts for the sale of the land, the plaintiff's default, the giving of the notice of their cancellation, contained stipulations, with others, to the effect that the defendants would postpone the cancellation of the contracts without surrender of any legal rights thereunder, save as expressly set forth therein. The plaintiff, on his part, thereby waived all claims he might otherwise have against the defendants for damages growing out of the contracts, or any of them. He also agreed to use his best endeavors for the period of one year from the date of the agreement to sell the lands included in the twenty-six contracts to third persons for prices agreed upon. And the defendants agreed that if, within the year, there should be sold enough of the lands at the agreed prices, with commission of ten per cent. for sales made by the plaintiff added, the amount thereof to be credited on the contracts, to pay the entire amount then remaining due on account of the contracts, they would convey to the plaintiff such of the lands covered by the contracts as remained unsold. But, in case sufficient sales were not made to pay this entire amount within the year, then the said twenty-six contracts should become null and void for all purposes, without necessity for any notice to plaintiff, or any other action whatever by defendants.

The plaintiff, during the year, sold certain of the lands pursuant to this agreement, which were deeded to purchasers by the defendants, but not enough land was sold to pay the amount due on the contracts. There was also then due for taxes on the lands some $31,000. The defendant railway company, on April 30, 1900, con-

veyed the lands to the defendant Russell Sage, who then had notice of the contracts and the agreement Exhibit B, and the plaintiff's rights thereunder in trust to sell them, and from the proceeds thereof repay the money advanced by him to pay the taxes thereon, and to divide the surplus, if any, among its stockholders. The plaintiff had no notice of this conveyance until July 14, 1900, when the defendant Sage caused to be served upon him a notice to the effect that he had acquired title to the land, and that the plaintiff's interest under the agreement Exhibit B was at an end. The defendants, and each of them, ever since that date have refused to recognize the existence of any rights on the part of the plaintiff in the contracts or the agreement, but, on the contrary, they have ever since that date insisted that he had, and now has, no rights whatever thereunder.

By the acts and conduct of the defendants prior to the execution of Exhibit B they waived all provisions of the contracts mentioned therein making it the essence of such contracts for default in the payments under the contracts to work a forfeiture of the rights of plaintiff thereunder. On or before July 25, 1900, the plaintiff tendered to the defendants the full amount due for the purchase price of the lands and for taxes thereon paid by them, which was refused. The plaintiff, since July 19, 1900, has been able, ready, and willing to pay to defendants the entire amount due under the contracts mentioned in Exhibit B, and this fact has at all times been known to them, but they have at all times insisted that plaintiff had no right to make any payments under the contracts, and no rights whatever thereunder. There is due to the defendant Sage from the plaintiff on account of the purchase price of the lands involved in this action and for taxes paid and for interest the sum of $62,262.20.

The trial court, as conclusions of law, found that the agreement, Exhibit B, was an instrument for the future conveyance of real estate, or an equity therein, within the meaning of Laws 1897, c. 223, and, notice never having been given to plaintiff as required by the statute, his rights thereunder have never been terminated, and are in full effect. The tender was sufficient to stop interest.

86 M.—33

On payment of the sum found due, the plaintiff is entitled to a deed of the lands to be executed by the defendant railway company and Sage. Upon the payment of such sum to defendant Sage, or into court, plaintiff is entitled to judgment directing the defendant railway company and the defendant Sage to execute and deliver to him deeds for all of the lands involved in this action, and that in default of such conveyances the judgment stand in lieu thereof, and be taken as such conveyance. Plaintiff is to have thirty days from the date of filing these findings, August 10, 1901, in which to pay such sum to defendants or into court, and, in case he fails to so pay it, defendant shall be entitled to judgment that the contracts and Exhibit B are fully terminated, and that defendant Sage owns the lands free and clear of any claim thereto by the plaintiff. Judgment was entered substantially in accordance with the conclusions of law August 13, 1901. It was provided in the judgment that such payment might be made to one of the defendants' attorneys, who was also the land commissioner of the railway company.

Payment was not made, nor was the amount due deposited in court, as required by the judgment. Thereupon the defendants applied to the court (as stated in the notice of the application) "for its determination that the plaintiff has not made payment as required by the judgment heretofore entered in the above-entitled action, and for the further judgment and determination of the court as is provided in said judgment heretofore entered that the defendant Russell Sage owns the land in said judgment above mentioned, referred to, and described in fee simple, free and clear of and from any and every interest, claim, or demand of the plaintiff hereto, or to any part thereof." On the hearing of this application it appeared that the land commissioner and attorney of the defendants informed the plaintiff, after the entry of the judgment, that it would be of no use to offer to pay the money to him, because he could not accept it, and that, if the money was paid into court, the case would be appealed; that such were his positive instructions. It also appeared on such hearing beyond reasonable controversy that the plaintiff was assured by the attorneys of the defendants that the latter would not abide by the judgment, but would

appeal, and continue the litigation, if the payment into court was made. The trial court granted the application, and determined that payment had not been made or tendered as in the judgment required. Afterwards, and on December 27, 1901, the plaintiff moved the trial court to amend its findings and conclusions of law. The motion was denied, and the plaintiff appealed from the order. He also appealed from the determination or judgment of the court that the plaintiff had not complied with the original judgment and from the original judgment.

The order denying the motion to amend the findings and conclusions of law was not appealable, and the appeal must be and is dismissed. Rogers v. Hedemark, 70 Minn. 441, 73 N. W. 252; Wheadon v. Mead, 71 Minn. 322, 73 N. W. 975; Savings Bank of St. Paul v. St. Paul Plow Co., 76 Minn. 7, 78 N. W. 873.

The defendants also claim that the determination of the court that the original judgment had not been complied with as to making payment for the land is not appealable. The effect of the order making such determination is, in view of the provisions of the original judgment, a final adjudication that the defendant Sage is the owner of the lands, and that the plaintiff has no interest therein. It is then a further or supplemental judgment, and so understood to be by the defendants' counsel, for they so labeled it in their application for it. It is appealable. It is analogous to an order or judgment in foreclosure proceedings in court adjudging that no redemption has been made as provided by the original decree. Dodge v. Allis, 27 Minn. 376, 7 N. W. 732.

If, however, the original judgment be correct, this supplemental judgment is also correct, for, the payment not having been made as required by the original judgment, the defendant, by the very terms of the latter, was entitled to the supplemental one. But if the original judgment is erroneous for any cause, the supplemental judgment must fall with it. This brings us to the question whether the original judgment can be sustained. The plaintiff's assignments of error 7 and 8 raise the question whether the conclusion of law of the trial court to the effect that he must actually pay the amount found due on the contracts for the purchase of the land to the defendant or into court within thirty days, or forfeit

all rights in the lands, is sustained by the facts found. The plaintiff claims that it is not, because it is grossly inequitable, and not in accordance with the terms of his contract. This is the only question we find it necessary to discuss. It is obvious from its mere reading that the deed from the railway company to the defendant Sage is not an absolute conveyance of the lands, and that it does not entitle the plaintiff to an accounting for the lands described therein. Other assignments of error, challenging the correctness of certain findings of fact, we do not consider or dispose of upon the merits for the reason that the plaintiff, in view of the other findings of fact and conclusions of law to the effect that he had not lost his rights under his contracts when he made his tender, and that the latter was sufficient, was not prejudiced, no matter whether the particular findings complained of were correct or not. The finding of the court as to the plaintiff's alleged damages was correct.

This brings us to the question whether the conclusion of law as to the payment of the money to the defendants or into court is sustained by the findings of fact. The controlling ultimate facts upon which the conclusion rests, tersely stated, are that the plaintiff had some $50,000 invested in his contracts. He tendered the balance of the purchase price at a time when his rights under the contracts were in force. The tender was refused. The defendants then, and ever since have, and still do insist that all of the plaintiff's rights have been lost, and that they were and are the absolute owners of the land; and they asked in their answer that the court so decree. The plaintiff has ever since been willing and able to pay the purchase price if he can have any assurance that he can have a deed for the lands as stipulated in his contracts.

It is manifest from these facts that the plaintiff has at no time since making the tender been in default. He was not required to repeat the tender, for he had nothing further to do to preserve his rights until the defendants indicated a willingness to comply with the contracts on their part by a demand of the money tendered. It is equally clear that the defendants were in the wrong from the time they refused the tender, and still are, and that they have not since then put the plaintiff in default by offering to accept

the money tendered. Such was the position of each party when this action was begun, and it has not been changed; and yet the defendants, without ever receding from their position, or ever indicating a willingness to accept the unpaid purchase price, were awarded an affirmative judgment in their favor to the effect that the defendant Sage is the owner of the lands, and that all the plaintiff's rights therein or in his contracts are terminated. The inequity of the original judgment is placed in a clear light by the facts established on the hearing of the application for the supplemental judgment. They make it clear that the defendants have resisted the plaintiff's right to pay for the lands and receive a deed therefor at all times since the tender was made, and that they intended to continue the litigation by appeal if the money had been deposited in court. The effect of the judgment was to compel the plaintiff, who was not in default, to pay into court some $62,000, while the defendants were in the wrong, and were resisting his claim to the lands; and to accept for his money, in place of a deed, the burden and uncertainty of further litigation, which might be continued for months, perhaps for years. We therefore hold that the conclusion of law by the trial court is inequitable, and not supported by the facts found.

It is true, as counsel for defendants claim, that the plaintiff, notwithstanding his tender, is not entitled to a deed or decree vesting the title to the lands in him without paying the balance of the purchase price, and that the court could not direct the entry of any judgment which should pass the title to the lands until the money was paid into court for the defendants. But the inequity of the original or preliminary judgment lies in the fact that it requires such payment or deposit to be made before the defendants indicate their willingness to accept the money, or the original judgment is affirmed on appeal, or, in case there be no appeal, the time for appealing therefrom expires. If the plaintiff had been in default, and was, by this action, appealing to the equity side of the court to be relieved therefrom, the conclusion of the court would have been right. But such is not this case, for, according to the facts found by the court, the plaintiff was clearly entitled to specific performance, and it would have been an abuse of discre-

tion to have denied it. The defendants were the parties in default, and were in no event entitled to judgment in their favor cancelling the contracts without first putting the plaintiff in default by offering to accept the money and deliver the deed.

Our conclusion is that both judgments appealed from must be reversed, and the case remanded, with direction to the district court to so amend its conclusions of law as to provide, in effect, that the time limited in which the plaintiff must pay or deposit the amount found due to the defendant Sage shall commence to run only from the time the defendant files a written notice with the clerk of the court that he is willing to receive the money and deliver the deed, or, in case such notice is not filed, from the time the judgment determining the rights of the parties becomes irreversible by affirmance on appeal, or by the expiration of the time limited for taking an appeal. If the defendant has paid any taxes on the lands since the findings of fact and conclusions of law were filed, the amount thereof, with interest, should be added to the amount the plaintiff is required to pay. So ordered.