URI L. LAMPREY v. ST. PAUL & CHICAGO RAILWAY COMPANY
and Others.[1]

May 1, 1903.

Nos. 13,436—(153).

**Specific Performance.**

Action to enforce specific performance of an agreement to convey real estate, the terms of which are set forth in the opinion. *Held*:

**Consideration.**

1. The agreement is supported by a valid consideration, and is, in legal effect, a contract for the future conveyance of land, within the meaning of Laws 1897, c. 223, providing for the manner of terminating the rights of vendees in such contracts.

**Enforcement of Contract.**

2. If a contract for the sale of land is supported by a valid consideration, and there is no other good reason why it should not be specifically enforced except the want of mutuality of remedy, it will be so enforced.

**Tender—Interest.**

3. The tenders by the plaintiff of the balance of the purchase price of the land were sufficient, and stopped the running of interest, and the trial court did not err in its finding of the amount due on the contract.

Appeal by defendants, St. Paul & Chicago Railway Company and Russell Sage, from a judgment of the district court for Ram-

1 Reported in 94 N. W. 555.

sey county, entered pursuant to the findings and order of Bunn, J. Affirmed.

*Owen Morris* and *Durment & Moore,* for appellants.

*Henry C. James,* for respondent.

START, C. J.

This is an action to enforce the specific performance of a contract to convey real estate.

Our decision on a former appeal herein taken by the plaintiff is reported in 86 Minn. 509, 91 N. W. 29. We held on that appeal that the conditions upon which the plaintiff was entitled to specific performance imposed by the district court were inequitable, and remanded the case, with directions to the district court so to amend its conclusions of law as to provide, in effect, that the time limited in which the plaintiff must pay or deposit the amount found due to the defendant Sage shall commence to run only from the time the defendant files a written notice with the clerk of the court that he is willing to receive the money and deliver the deed, or, in case such notice is not filed, from the time the judgment determining the rights of the parties becomes irreversible by affirmance on appeal, or by the expiration of the time limited for taking an appeal. Thereupon the district court so amended its conclusions of law, and judgment was entered for the plaintiff accordingly, from which the defendants appealed.

We assume, for the purpose of this decision only, that the defendants are not precluded by the result of the former appeal from now urging the objections to the judgment raised by their assignments of error on this appeal.

Nearly all of the questions raised and discussed by the defendants meriting consideration depend for their solution upon the nature and construction of the alleged contract to convey the lands in question. The terms of the contract and the acts of the parties with reference thereto, as found by the district court, are quite fully set out in the opinion on the former appeal. It is only necessary to say here that the defendant railway company, on February 2, 1887, entered into contracts with the plaintiff to convey to him one hundred thousand acres of land lying in different

townships in this state upon being paid the purchase price therefor in accordance with the terms and conditions of the contracts. There was a separate contract for the lands in each township, and the plaintiff had the right to pay for and demand a deed for all of the land described in each contract, and not otherwise. The plaintiff paid one-fifth of the purchase price of the lands at the time of the delivery of the contracts, and agreed to pay the balance thereof on or before February 2, 1888. The plaintiff paid for all of the lands, and received deeds therefor, except the lands described in twenty-six of the contracts, prior to January 23, 1899. But as to the twenty-six contracts more than $37,000, including principal and interest, was long overdue and unpaid at the date last named. The parties, however, continued during all such time to deal with each other under the contracts as if they were in full force. On that day the defendants attempted to declare a forfeiture of the contracts by reason of the plaintiff's default in making payments thereon, but this attempt was ineffectual, as the plaintiff claimed, because no notice of such declaration ever came to his knowledge until long after the expiration of the time limited in such notice for him to perform the contracts on his part. The defendants claimed otherwise. Thereupon negotiations were had between the parties, which resulted in the execution of an agreement between the parties, dated July 13, 1899, but which was not signed by the plaintiff nor delivered until August 9, 1899.

This agreement, which is referred to in the record as "Exhibit B," after reciting the making of the contracts for the sale of the land, the plaintiff's default, and the giving of the notice of their cancellation, contained stipulations, with others, to the effect that the defendants would postpone the cancellation of the contracts without surrender of any legal rights thereunder, save as expressly set forth therein. The plaintiff, on his part, thereby waived all claims he might otherwise have against the defendants for damages growing out of the contracts, or any of them. He also agreed to use his best endeavors for the period of one year from the date of the agreement to sell the lands included in the twenty-six contracts to third persons for prices agreed upon, and, further,

to pay the expenses of a recent appraisal of the lands by the defendant trustee. And the defendants agreed that if, within the year, there should be sold enough of the lands at the agreed prices, with commission of ten per cent. for sales made by the plaintiff added, the amount thereof to be credited on the contracts, to pay the entire amount then remaining due on account of the contracts, they would convey to the plaintiff such of the lands covered by the contracts as remained unsold. But, in case sufficient sales were not made to pay this entire amount within the year, then the said twenty-six contracts should become null and void for all purposes, without necessity for any notice to plaintiff, or any other action whatever by defendants.

The plaintiff, during the year, sold certain of the lands pursuant to this agreement, which were deeded to purchasers by the defendants, but not enough land was sold to pay the amount due on the contracts. The defendants never gave the plaintiff notice of the termination of his rights under Exhibit B, pursuant to Laws 1897, p. 431 (c. 223).

On or before July 25, 1900, the plaintiff tendered to the defendants the full amount due for the purchase price of the lands and for taxes thereon paid by them, and demanded a deed therefor, which was refused. The plaintiff, since July 19, 1900, has been able, ready, and willing to pay to defendants the entire amount due under the contracts mentioned in Exhibit B, and this fact has at all times been known to them, but they have at all times insisted that plaintiff had no right to make any payments under the contracts, and no rights whatever thereunder.

The district court found that there was due to the defendants, on account of the purchase price of the lands and for taxes and interest, $62,262.20, and decreed a conveyance of the lands upon payment of this amount within a time limited. This amount was reached on the assumption that plaintiff was entitled to commissions as upon the sale of the lands under the terms of Exhibit B, and also on the assumption that the tenders made by plaintiff stopped the running of interest. The manner of making such tenders was substantially this: The plaintiff had with him at the time they were made the sum of $16,000, and no more, which he

tendered to the defendants for the several tracts of land described in three of the original contracts, which was refused. He then used the same money in making tenders for the balance of the land in controversy. The defendants refused each and all of the tenders, but gave no reason for so doing.

1. The defendants contend that Exhibit B was without consideration if the plaintiff's agreement that his right "to have the lands should absolutely cease at the end of one year from its date" be eliminated, and that, if it is not enforced, the consideration for Exhibit B fails, and it cannot be enforced. The consideration to support the contract is ample. It is to be found in the mutual promises of the parties, and especially the plaintiff's promise to surrender all his claims for damages growing out of the original contracts, his agreement to pay the expenses of the appraisal of the lands made by the trustee, and his equities in the lands under the original contracts.

2. It is also urged by the defendants that Exhibit B is not a contract for the conveyance of land, or any interest therein, but simply an adjustment of a dispute as to the original contracts; that, considered as a contract for the conveyance of lands, it is but an option; and that it required the defendants to convey the land only to third parties, and not to the plaintiff, unless enough was sold to such third parties during the time limited to pay the full purchase price of all the lands. It must be construed with reference to the original contracts, the time and circumstances at and under which it was made, and the intention of the parties as shown by all that preceded and led up to its execution. So construing, it is quite obvious that the construction claimed by the defendants is not the correct one. Their evident purpose in entering into the contract was to secure payment of the purchase price of the land they had previously contracted to convey, and to that end they were willing to and did make material concessions, and give to the plaintiff new and important rights to induce him to use his best efforts to pay for the land within the time limited, by selling enough of it to pay the defendants.

At the time this contract was made, the plaintiff had lost his strict legal rights to the land by virtue of his original contracts,

but his equities therein had not been extinguished, and by the contract his legal rights were not only reinstated, but new and additional ones given to him including practically a reduction of ten per cent. of the purchase price by way of commissions. A strict construction of the contract would limit the amount to be paid on the purchase price of the land to the proceeds from sales of land to third parties. Such a construction, however, is not consistent with the manifest intention of the parties, for it was immaterial to the defendants how the plaintiff made the payments, so long as they received the full amount due for the land.

We therefore hold that the contract is one for the future conveyance of real estate, or an equity therein, within the meaning of Laws 1897, p. 431 (c. 223). The plaintiff's rights therein could only be terminated by giving the notice required by the statute. No notice having been given, the plaintiff's rights remained in full force at the time the tenders were made. The cases of Western Realty Co. v. Phelps, 86 Minn. 52, 90 N. W. 11, and Joslyn v. Schwend, 85 Minn. 130, 88 N. W. 410, cited by the defendants, are not here in point. In the first one the subject-matter of the controversy was a stipulation for judgment in an action to cancel a contract for the sale of real estate. In the second one the contract construed was radically different from the one here in question.

3. The defendants further urge that the contract is wanting in mutuality of remedy, which is necessary to entitle the plaintiff to specific performance. The early equity doctrine that, if the right to specific performance of a contract exists at all, it must be mutual, was based largely upon notions of expediency, rather than upon any principle of abstract justice, and has been materially modified. The doctrine of this court is that, if a contract for the conveyance of real estate is supported by a valid consideration, and there is no other good reason why it should not be specifically enforced except the want of mutuality of remedy, it will be so enforced. Austin v. Wacks, 30 Minn. 335, 15 N. W. 409. Such is this case.

4. Lastly, it is claimed that the tenders were insufficient in amount, and did not stop the running of interest; and, further,

that the trial court erred in finding the total amount due on the purchase price of the lands. If the court was correct in holding that the plaintiff was entitled to a credit by way of commissions as upon the sale of the lands under the terms of Exhibit B, the tenders were sufficient in amount, and the sum found due correct.

It follows, from what has already been said in construing the contract, that the holding of the court was correct. We hold that the tenders were properly made, and sufficient in amount, and, in view of the fact that the plaintiff at all times thereafter was able, ready, and willing to pay the amount due on the contracts, the tenders stopped the running of interest, and that the trial court found the correct amount to be due.

Judgment affirmed.