WILLIAM WINDORSKI, SPECIAL ADMINISTRATOR OF
ESTATE OF ANDREW J. STANDER, DECEASED, v.
HUGH DOYLE AND ANOTHER.
BLANCHETT INVESTMENT COMPANY, RESPONDENT.[1]

March 16, 1945.

No. 33,868.

[1]Reported in 18 N. W. (2d) 142.

*John D. Sullivan* and *William W. Fink,* for appellant.
*Cummins & Cummins,* for respondent.

MAGNEY, JUSTICE.

The court directed a verdict in favor of defendant Blanchett Investment Company, a corporation, and the jury awarded plaintiff damages against defendant Hugh Doyle. Plaintiff's motion for an order granting a new trial as against the company was denied, and he appeals from the judgment.

The company owned and operated an "on sale" liquor establishment in the city of St. Paul. In the evening of June 16, 1942, Andrew J. Stander was its patron and guest. So also was defendant Doyle. As the result of a blow struck by Doyle, Stander died on November 6, 1942. This action was brought in behalf of the minor children of Stander to recover damages for his wrongful death.

Lined up at the defendant's bar, in the order named, were Doyle, Stander, Joe Butler, and Robert E. Jay. Behind the bar was Harry McGrath, the bartender. Seated at a table about four feet from the bar was Rosella Jay, wife of Robert E. Standing near the end of the bar was Mrs. Dorothy Murphy, a waitress. There is testimony that Mr. and Mrs. William Sullivan were also present in the barroom. Stander, Butler, and McGrath are now dead.

Stander, who had "just kind of squeezed in" between Doyle and Butler, then left the bar and went over to Mrs. Jay. After having placed his glass of liquor on the table, he proceeded to sit down. As he was so doing, Doyle approached and said: "What did you say?" and immediately struck Stander and knocked him down. McGrath, the bartender, was talking to Butler and Jay when this happened. Stander later died from his injuries.

Mr. and Mrs. Jay had entered the barroom about eight or ten minutes before the incident occurred. When they came in, Doyle was at the bar sipping a highball. Stander was standing next to him. Mrs. Jay said she had noticed Doyle during the eight or ten minutes she had been in the place. All of a sudden, she said, there was some loud talking, and she was afraid her husband might get into the argument too, but he did not do so. She said:

"When I first started noticing him [Doyle], he was talking loud up at the bar and pretty close to my husband and Mr. Butler and Mr. Stander, and then I noticed he kept nudging himself over closer to Mr. Stander at the bar, and the three of them were talking together. They were not paying any attention to him at all. * * *

\* \* \* \* \*

"Well, when I heard all the argument and everything, I didn't see exactly what was going on, what was said or anything, but I knew it was pretty unusual. Then pretty soon Mr. Stander came over to my table and set his drink down." She said Doyle then staggered over to her table, talking loudly. "He kind of slurred his words together. You couldn't understand him very well." She testified that there was nothing said that attracted her attention, just the loud talking and the fact that she did not want her husband to get into any argument.

"Q. What did you hear said?

"A. I didn't hear anything specially said.

"Q. You just heard them talking very loudly?

"A. Very loudly."

Jay said he did not observe Doyle's condition until after everything had happened. He helped the bartender put Doyle out of the door immediately after the incident and then noticed he was under the influence of liquor. On this evidence which we have detailed, plaintiff bases his contention that error was committed when the court directed the verdict. He claims that the question of negligence was one of fact and not of law, and, therefore, for the jury's determination.

■ In Bartley v. Fritz, 205 Minn. 192, 197, 285 N. W. 484, 486, this court stated the general rule as follows:

"A verdict may be directed in those unequivocal cases where it clearly appears to the court on trial that it would be its duty to set aside a contrary verdict as not justified by the evidence or as contrary to the law applicable to the case. Abbett v. C. M. & St. P. Ry. Co. 30 Minn. 482, 16 N. W. 266; Yates v. Gamble, 198 Minn. 7, 268 N. W. 670; 23 Minn. L. Rev. 363, 367. It is only in the clearest of cases where the facts are undisputed and it is plain that all reasonable men can draw only one conclusion that the question of negligence becomes one of law. Mechler v. McMahon, 180 Minn. 252, 230 N. W. 776, and cases there cited. See also Hack v. Johnson, 201 Minn. 9, 275 N. W. 381. A motion for a directed verdict presents a question of law only. It admits, for the purposes of the motion, the credibility of the evidence for the adverse party and every inference which may be fairly drawn from such evidence."

■ Section 23 of Ordinance No. 7537 of the city of St. Paul reads in part as follows:

"(c) *No liquor shall be sold or furnished* for any purpose whatever to any person under twenty-one (21) years of age or to an habitual drunkard or *to one obviously intoxicated* or to any person to whom such sale is prohibited by any law of this State or this ordinance.

   *  *  *  *  *

"(g) *Every licensee is hereby made responsible for the conduct*

*of his place of business, and required to maintain order and sobriety in such place of business."* (Italics supplied.)

The company sold liquor to Doyle. The testimony of Mr. and Mrs. Jay supports the claim that at the time of the assault Doyle was intoxicated. Whether or not he was *obviously intoxicated* when it sold or furnished him the liquor presented a question of fact for determination by the jury.

Mrs. Jay's testimony also raises an issue for jury determination on the question of the bartender's failure to maintain order and sobriety. According to Mrs. Jay, argument and loud talking had been going on for eight or ten minutes before Doyle struck Stander. Defendant company contends that the incident of Doyle's striking Stander happened in a flash and that the bartender had no opportunity to prevent it. It is true that the assault happened suddenly, but there is evidence to indicate that there were noisy preliminaries that had been under way eight or ten minutes prior to the incident.

■ The company was required to use reasonable care to protect its guests and patrons from injury at the hands of vicious or lawless persons whom it knowingly permitted to be in or about the premises. That rule is general. In Curran v. Olson, 88 Minn. 307, 308, 92 N. W. 1124, 60 L. R. A. 733, 97 A. S. R. 517, this court held:

"The defendants were bound to use reasonable care to protect their guests and patrons from injury at the hands of vicious or lawless persons whom they knowingly permitted to be in and about their saloon. If they delegated this duty to their barkeeper, they are responsible for his negligence in the premises. Mastad v. Swedish Brethren, 83 Minn. 40, 85 N. W. 913, 53 L. R. A. 803, 85 A. S. R. 446."

In the latter case, the court said (83 Minn. 42, 85 N. W. 914, 53 L. R. A. 803, 85 A. S. R. 446):

"* * * All who engage in a public business of that nature are bound to protect their guests, both in person and property, from acts and misconduct of wrongdoers permitted to remain upon the

premises; and the rules of law applicable to the common carrier are applicable alike to them. * * *

* * * * *

"There is no reason on principle why a person owning and controlling such a place, who sells his wares to such a person, knowing his ugly and quarrelsome disposition when intoxicated, should not be bound to exercise at least reasonable care to protect his other guests from his assaults and insults. The proprietor of such a place has the undoubted right to exclude therefrom drunken and disorderly persons, and the right to remove and expel them when they become in that condition and disorderly, and likely to produce discord and brawls. Being clothed with such power and authority, a corresponding duty to do so in the interests of law and order, and for the protection of his other guests, should be imposed as a matter of law. We are now speaking of a person lawfully engaged in the business stated in the complaint, * * *."

■ At the retrial of this case, the questions raised over the admissibility of evidence will undoubtedly arise again. We will therefore consider them.

Robert E. Jay, a witness for plaintiff, had tended bar for the company at this barroom for two years, his services terminating in 1941. He was asked: "Now, during this period I will ask you whether you had had any difficulty there with Mr. Doyle by reason of his conduct?" An objection was sustained, and the court stated: "It is too remote, I think. It is over a year before this." Plaintiff then offered to prove by this witness that "while he was working in the place where this occurrence happened, the defendant Blanchett Investment Company during a period of some two years prior to July or August 1941, * * * on at least two occasions removed the defendant Hugh Doyle from the premises because he was molesting and threatening other customers in the establishment." An objection was sustained.

We think the court erred. It is true that these occurrences were remote in time, but that would go to the weight, and not to the

admissibility, of the testimony. The matters inquired into had a bearing on the questions involved.

Mrs. Dorothy Murphy was the waitress in the barroom. She was called as a witness by plaintiff and testified as to the occurrences on the evening in question. After she had been excused, plaintiff called Francis John Stander as a witness. He testified that he had talked with Mrs. Murphy about two days after the incident. He was asked: "Now, you give us the conversation that you had with Mrs. Murphy at that time?" An objection was made and sustained. Plaintiff offered to prove by this witness that in that conversation Mrs. Murphy stated that they had had trouble there with Doyle, that Stander had been trying to get away from him, and that he had said to Doyle: "You leave me alone." Defendant objected, and the objection was sustained. We think the court ruled correctly. Plaintiff was attempting to impeach his own witness, and there was no foundation laid for this type of testimony.

Plaintiff (Windorski) spoke to McGrath, the bartender, a week or ten days after June 16, the date of the incident. He was asked: "And will you give us the conversation you had with Mr. McGrath at the time?" An objection to the question was sustained. Plaintiff made offer of proof. He offered to prove by the witness at defendant's place of business that prior to the occurrence between Stander and Doyle, the latter, earlier that evening, had been troublesome and threatening to other customers and that McGrath had told Doyle he would have to desist or he would be put out. Then he further said that Doyle had hit Stander without any provocation so far as he could see on the part of Stander. McGrath was defendant's bartender and in charge of its place of business as far as the evidence shows. He had knowledge of the facts. At the time of the trial McGrath was dead. The question is whether the conversation between him and plaintiff is admissible in evidence. In Halvorsen v. Moon & Kerr Lbr. Co. 87 Minn. 18, 91 N. W. 28, 94 A. S. R. 669, it was held that declarations, whether verbal or written, made by a deceased person as to facts presumably within his knowledge, if relevant to the matter of inquiry, are admissible

in evidence between third parties when it appears that (a) the declarant is dead; (b) the declaration was against his pecuniary interest; (c) the declaration was of a fact in relation to a matter of which he was personally cognizant; (d) the declarant had no probable motive to falsify the fact declared. In that case, question arose as to the origin of a fire in a butcher shop. One George Schlink was in charge of a sausage room at the time of a fire. At the time of the trial he was dead. Defendant called a witness, Neil McLeod, who testified that he had a conversation with Schlink 17 days after the fire in which the subject of the fire came up. He was asked to give the conversation. The question was objected to and the objection sustained. Defendant then made an offer of proof that Schlink was in charge of the sausage room; that, in a conversation after the fire, Schlink told him that on the day of the fire he was "trying" lard in the sausage room; that, when the alarm was given of the mill fire, he left the lard kettle boiling and went out to see the mill fire; and that when he returned the lard kettle had boiled over and set the room and building on fire. The question was whether the fire that destroyed plaintiff's building was caused by the mill fire. The offer was objected to and the objection sustained. This court held that it was error to reject the evidence. It said (87 Minn. 21, 91 N. W. 29, 94 A. S. R. 669):

"* * * Confessedly the evidence was hearsay, but it falls within a necessary and established exception to the general rule excluding hearsay evidence."

The following later cases support this rule: Paine v. Crane, 112 Minn. 439, 128 N. W. 574; Quarfot v. Security Nat. Bank & Trust Co. 189 Minn. 451, 249 N. W. 668; State v. Voges, 197 Minn. 85, 266 N. W. 265.

The situation here is somewhat similar to the facts in the Halvorsen case. McGrath, the bartender, was in charge of the tavern insofar as the evidence discloses. He is dead. The declaration was of a fact relative to a matter of which he was personally cognizant. The declarant had no probable motive to falsify the fact

declared. In order to qualify as an admissible statement under the Halvorsen case, the declaration would also have had to be against McGrath's pecuniary interest. In the Halvorsen case, it was argued that the declaration there involved was not against Schlink's pecuniary interest. In answer to that argument, this court said (87 Minn. 22, 91 N. W. 29, 94 A. S. R. 669):

"* * * We are of the opinion that the facts claimed to have been admitted by him, taken in connection with the fact that he had charge of the sausage room, furnished the basis of a pecuniary claim against him on the ground of his negligence."

Plaintiff here, as has been stated, offered to prove that prior to the occurrence between Stander and Doyle the latter, earlier that evening, had been troublesome and threatening to other customers, and McGrath had told Doyle that he would have to desist or be put out. He further said that Doyle had hit Stander without any provocation so far as he could see on the part of Stander. The mere form of the question set out in the offer of proof is not of importance. The ground for the admissibility of the statement in the Halvorsen case was, repeating the words of this court, "that the facts claimed to have been admitted by him, taken in connection with the fact that he had charge of the sausage room, furnished the basis of a pecuniary claim against him on the ground of his negligence." In this case, the facts claimed to have been admitted by McGrath may reasonably furnish a basis of a pecuniary claim against him, as he was in sole charge of the barroom. His acts and his failure to act alone are claimed to create liability against his employer. The company was acting solely through McGrath, and the claimed liability arose through him. It can, of course, be argued that it could not possibly have occurred to him in his position that he could be subjected to civil liability when he made the claimed statement. In our opinion, however, the court should not have sustained the objection.

Judgment reversed.