WILBERT PRIEWE v. RICHARD BARTZ AND OTHERS.
CARL MOGEN AND ANOTHER, APPELLANTS.

83 N. W. (2d) 116.

May 10, 1957—No. 36,964.

*James T. Spillane,* for appellants.

*F. J. O'Brien* and *R. V. Ehrick,* for respondent.

MURPHY, JUSTICE.

Action to recover damages for personal injuries sustained by the plaintiff while in the tavern of the defendant Carl Mogen by reason of the alleged negligence of said defendant and his employee, defendant Mildred Smallbrock, in failing to protect the plaintiff from an assault by an intoxicated person who was permitted to be on the premises. There was a verdict for the plaintiff and the defendants have appealed from an order denying their alternative motion for judgment or for a new trial.

The defendant Richard Bartz, who was alleged to have committed the assault, was properly served but failed to appear for trial and is in default. On the theory that the defendants Mogen and Smallbrock negligently failed to maintain order and sobriety in their place of business, the plaintiff contends they are liable for the actions of Bartz. The jury returned a verdict against all three defendants for $20,000. Defendants Mogen and Smallbrock have appealed.

Viewing the evidence in the light most favorable to the verdict (1 Dunnell, Dig. [3 ed.] § 415b) the jury could have accepted the following facts: The plaintiff, Wilbert Priewe, and his friend, Jesse Denure, both from Wisconsin, were in Rochester to obtain veteri-

nary assistance for the plaintiff's pet lion. They entered defendant Mogen's bar about 8:30 p. m. on the day of the assault. Mogen was present when they entered but departed shortly thereafter, leaving the premises in charge of the defendant Miss Smallbrock, a barmaid. Two other girls were present. Shortly after Mogen's departure, the defendant Bartz entered the premises accompanied by one Vikkers. There was some conversation between those who were present at the bar. It appears that the plaintiff had some talk with Vikkers. Bartz, in his intoxicated condition, took offense at something he thought plaintiff said or did at this time. Bartz shouted: "Leave my buddy alone" and in obscene and abusive language invited plaintiff to go outside and fight. During the verbal exchange which followed between the plaintiff and Bartz, Miss Smallbrock told them to "take it outside." Bartz then walked to the back door which entered upon the alley and, finding that the plaintiff did not follow him, stood at the doorway for a couple of minutes calling to the plaintiff and challenging him to come out and fight. When he realized that he was being ignored by the plaintiff, he returned to the room and took up a position at the center of the bar where the others were either seated or standing. He then took from the bar a glass of beer which apparently had been previously served to him. After some interval the plaintiff in an attempt to mollify Bartz offered to buy him a glass of beer. Bartz responded by throwing the glass and contents into the face of the plaintiff as a result of which the plaintiff's eye was cut. The plaintiff's companion, Denure, immediately suggested to Miss Smallbrock that she call the police. The police station was located directly across the street from the establishment. Miss Smallbrock refused, saying that the police were never called there. A physician was called and plaintiff was taken to a hospital. As a result of the assault plaintiff lost the sight of one eye.

The defendant Bartz had been a customer of the establishment for some time and Miss Smallbrock was acquainted with him. While Miss Smallbrock denied that Bartz appeared to be intoxicated, the jury could not be expected to accept her testimony. Bartz himself, when questioned at the taking of a deposition, said: "I don't think

I was staggering. I was full, I know that." This is Bartz's version of the affair:

"The first thing I recall is that he was putting on a pair of pigskin gloves and he was going to kill me. That was his statement. And I went out the back door and I said, 'Come on' and I went out the back door, and then I come back in and I stood there. I don't know what I had to drink. It must have been beer, I suppose. He come and stuck his nose in and I was going to throw the beer in his face, or whatever it was involved, and I hit him in the eyes. That's the way it happened."

Bartz admitted that he had been drinking whiskey and beer "all day" and named numerous bars which he had visited.

█ In light of a line of positive decisions in this state, there can be no doubt that Mogen, the operator of a 3.2 beer establishment, owed a duty to those coming upon his premises to exercise reasonable care to protect them from injury at the hands of other patrons. He had a duty to see to it that the plaintiff was not injured by vicious or drunken individuals whom he may have permitted to frequent his establishment. A patron at a 3.2 bar has a right to rely on the belief that he is in an orderly house and that its operator, personally or by his delegated employee, will exercise reasonable care "to the end that the doings in the house shall be orderly." See, 30 Am. Jur., Intoxicating Liquors, § 609; Curran v. Olson, 88 Minn. 307, 308, 92 N. W. 1124, 60 L. R. A. 733; Mastad v. Swedish Brethren, 83 Minn. 40, 85 N. W. 913, 53 L. R. A. 803; Christianson v. Hager, 242 Minn. 41, 64 N. W. (2d) 35; Klaman v. Hitchcock, 181 Minn. 109, 231 N. W. 716; Sylvester v. Northwestern Hospital, 236 Minn. 384, 389, 53 N. W. (2d) 17, 20; Cherbonnier v. Rafalovich (D. Alaska) 88 F. Supp. 900; Annotation, 29 A. L. R. (2d) 911; Windorski v. Doyle, 219 Minn. 402, 18 N. W. (2d) 142.

In Mastad v. Swedish Brethren, *supra*, we held that those engaged in the sale of intoxicating liquor and in the business of common carriers, as well as hotel and innkeepers, are bound to protect their guests from acts and misconduct of wrongdoers permitted to remain

upon the premises and that that responsibility extends to the conduct of those who may have become intoxicated elsewhere.

■ In support of his contention that the verdict is contrary to the evidence, the defendant Mogen argues that he cannot be liable for personal injuries resulting from the act of a customer where neither he nor his employee knew, or by the exercise of reasonable care could have known, that the manner and behavior of the customer were such as to indicate to a person of ordinary prudence that the customer might commit acts which would naturally result in injury to others. The appellants do not contend that the plaintiff or his friend, Denure, were under the influence of liquor nor do they claim that the plaintiff at any time struck at Bartz. It is argued, nevertheless, that the plaintiff was contributorily negligent by remaining on the premises after he became aware of the belligerent manner of Bartz and that, if the plaintiff had not offered to buy Bartz a drink, the assault would never have occurred.

The questions of the negligence of the defendants and the contributory negligence of the plaintiff were submitted to the jury by proper instructions from the court. From the record it fully appears that there was ample evidence for the jury to find that both Bartz and his friend, Vikkers, were obviously intoxicated. The duty of the proprietor was not met by the admonition of the barmaid that the parties should go outside if they wanted to fight. In Sylvester v. Northwestern Hospital we discussed the disorderly conduct of intoxicated persons and observed (236 Minn. 389, 53 N. W. [2d] 20) "authorities recognize that drunken behavior is unpredictable; also that slight irritations, real or imaginary, may cause outbursts of anger and lead to aggressive acts." The presence of an intoxicated person upon the premises immediately exposes the proprietor to the hazards of liability resulting from the unpredictable conduct of such person, and when it appears that such intoxicated person might cause a disturbance or harm other patrons, the proprietor is obligated to do something more than request such a person to leave. There must be some affirmative action to maintain order on the premises by demanding that such a person leave or by calling the

authorities to enforce such demand. In view of the evidence which indicates that Miss Smallbrock had ample opportunity to observe Bartz's manner and condition and the further evidence with reference to her subsequent conduct, we think that the question of her negligence under the circumstances was one of fact for the jury. Windorski v. Doyle, 219 Minn. 402, 18 N. W. (2d) 142.

■ The appellants contend that the trial court erred in failing to instruct the jury that the proprietor is not an insurer of the safety of his customers. The record does not indicate that the appellants specifically requested an instruction on this point nor does it indicate that any objection to the instruction as given was made before the jury retired. Rule 51 of Rules of Civil Procedure provides that error may not be assigned for unintentional misstatements and verbal errors or omissions in the charge unless objection is made before the jury retires to consider its verdict. The alleged error was first asserted by the appellants in the motion for a new trial. The rule further provides: "An error in the instructions with respect to fundamental law or controlling principle may be assigned in a motion for a new trial though it was not otherwise called to the attention of the court." An examination of the charge fully shows that the court instructed the jury as to the duties of the owner of a business establishment to the public including places where non-intoxicating beer is sold. In the absence of an express request or exception to the charge, this court will not consider an alleged error based on failure to give a negative cautionary instruction which under the circumstances here would not constitute a fundamental or controlling principle of law as indicated by Rule 51. Greenberg v. Holfeltz, 244 Minn. 175, 69 N. W. (2d) 369; Donovan v. Ogston, 239 Minn. 553, 59 N. W. (2d) 672.

■ Since the defendant Bartz was in default, it was proper for the court to instruct the jury that a verdict should be rendered in favor of the plaintiff as to him. In so instructing the jury, the appellants contend, the court erred in saying: "the plaintiff is entitled to a verdict against someone in this case." The following is the instruction of the court in full context with reference to this point:

"The plaintiff is entitled to a verdict for damages against the defendant Bartz, the defendants Mogen and Miss Smallbrock, or the defendant Bartz alone. Now restating that, *the plaintiff is entitled to a verdict against someone in this case.* It must either be against the defendant Bartz alone or against the three, Bartz, Miss Smallbrock and Mogen together." (Italics supplied.)

It is the italicized portion of the foregoing instruction to which the defendants take exception.

We have stated on numerous occasions that the charge of the trial court must be viewed in its entirety from a practical and common-sense viewpoint. "All that is required is that the charge as a whole convey to the jury a clear and correct understanding of the law." Cameron v. Evans, 241 Minn. 200, 208, 62 N. W. (2d) 793, 798. The charge included an explanation of the alternative forms of verdict submitted to the jury, one against Bartz alone and the other against all three defendants. The jury was instructed to find against all three "if you find that negligence on the part of Mildred Smallbrock was a concurring cause of this accident, and that the plaintiff Wilbert Priewe was not himself guilty of any negligence which contributed to cause the assault." Although the instruction deprived Bartz, who was in default, of all defenses, its effect was by no means misleading or prejudicial to the remaining defendants. The charge clearly expressed the duty of the proprietor, and in his absence his employee, in terms of reasonable care to protect guests of his establishment from the acts of misconduct of wrongdoers permitted to remain on the premises. It also defined reasonable care as the degree of care usually exercised by ordinarily prudent persons in similar circumstances. It stated that the misconduct of Bartz was not imputable to the appellants unless it could reasonably have been prevented by them in the exercise of ordinary care. The instructions further suggested the courses of action available to a proprietor where it might appear that any person on his premises might be assaulted by a patron. Construing the charge as a whole from the standpoint of its total impact or impression upon the jury, we conclude that it clearly and fairly stated the issues for the

jury to consider in the case. 19 Dunnell, Dig. (3 ed.) § 9794; Zurko v. Gilquist, 241 Minn. 1, 62 N. W. (2d) 351.

Affirmed.