## LEO A. METTLING v. TOM MULLIGAN AND OTHERS. LOUISE DuFRESNE AND ANOTHER, APPELLANTS.

225 N. W. 2d 825.

January 24, 1975—No. 44680.

*Schmidt, Thompson, Lindstrom & Thompson* and *John E. Mack,* for appellants.

*Prindle, Maland & Ward* and *W. D. Prindle,* for respondent.

Heard before Rogosheske, Kelly, and Yetka, JJ., and considered and decided by the court en banc.

YETKA, JUSTICE.

Defendants Louise and Earl DuFresne appeal from an order of the District Court of Chippewa County denying their motion for judgment notwithstanding the verdict, or, alternatively, for a new trial. We affirm.

The incident giving rise to this appeal occurred on April 15, 1972, in a 3.2 beer parlor known as The Tap, which was located in Montevideo, Minnesota. At that time, The Tap was owned and operated by defendants Louise and Earl DuFresne.

The incident occurred at approximately 9 p.m. Plaintiff and defendant Tom Mulligan were patrons of The Tap and had been conversing at the bar for approximately 5 to 10 minutes when all of a sudden Mulligan struck plaintiff without warning. Plaintiff sustained bodily injuries therefrom, including a broken jaw.

Plaintiff brought suit seeking to recover damages arising from the above injuries. The subject of this appeal is plaintiff's allegation that defendants Louise and Earl DuFresne were negligent in allowing defendant Mulligan, a man with well-known vicious and pugnacious propensities, to frequent The Tap. Plain-

tiff further alleged that said negligence was a proximate cause of his injuries.

The above contentions were tried before a jury, which returned a special verdict in which it found:

(1) The assault committed upon plaintiff by defendant Mulligan was willful and malicious.

(2) Defendants Louise and Earl DuFresne were negligent in the operation of the 3.2 bar at the time and place in question.

(3) Said negligence was a direct cause of plaintiff's injuries.

(4) Plaintiff was not guilty of contributory negligence.

The record is replete with evidence that Mulligan had been involved in a number of fights and altercations in defendants' tavern prior to the incident in question. The evidence further establishes that defendant Earl DuFresne and his employees were well aware of Mulligan's vicious and pugnacious propensities. In fact, DuFresne had barred Mulligan from the tavern completely, but later relented and allowed Mulligan to patronize The Tap *except on Saturday nights*. The incident occurred on a Saturday night, and both of The Tap employees on duty at the time were aware of the fact that Mulligan was not supposed to be on the premises at that time.

The record contains further evidence that Mulligan was well known in the community as a roughneck and a fighter, especially when drinking.

The issues raised on this appeal are:

(1) Whether Minnesota common law imposes a duty upon a tavern owner to eject or refuse admission to an individual possessing known violent and vicious propensities in absence of an indication that this individual was about to engage in activities which would expose other patrons to risk of harm.

(2) Whether evidence of plaintiff's own propensities to quarrelsome conduct was relevant to the issue of contributory negligence.

(3) Whether an inadvertent and mistaken question by plain-

tiff's counsel inquiring as to his own client's character requires trial court to allow appellants to introduce evidence to the contrary, even though plaintiff's counsel immediately withdrew his question and offered to concur with any corrective instruction.

## I

This court has long recognized that tavern owners are under a duty to exercise reasonable care in maintaining orderly premises for the protection of their patrons.[1] This rule applies to 3.2 beer parlors.[2]

This court has found liability in tavern owners predicated upon intoxication of the offending patron[3] and failure of tavern employees to act to make reasonable efforts to prevent injury to innocent patrons when put on notice of impending trouble.[4] Conversely, this court has refused to impose liability where the above two factors were absent.[5] However, in this last class of cases, there was *no* evidence tending to show actual knowledge of vicious propensities of the offending patrons of kind and degree present in the record of the case at bar.

Several prior decisions have seemingly shed some light on the particular situation now at issue. In Windorski v. Doyle, 219 Minn. 402, 18 N. W. 2d 142 (1945), this court reversed a lower court's directed verdict for defendant tavern owner. In so reversing, the court also held that evidence of the offending patron's past altercations in defendant's tavern was admissible

---

[1] Windorski v. Doyle, 219 Minn. 402, 18 N. W. 2d 142 (1945); Priewe v. Bartz, 249 Minn. 488, 83 N. W. 2d 116 (1957); Klingbeil v. Truesdell, 256 Minn. 360, 98 N. W. 2d 134 (1959).

[2] Klingbeil v. Truesdell, *supra;* Priewe v. Bartz, *supra.* See, also, Trail v. Christian, 298 Minn. 101, 103, 213 N. W. 2d 618, 621 (1973).

[3] Windorski v. Doyle, *supra;* Priewe v. Bartz, *supra;* Klingbeil v. Truesdell, *supra.*

[4] Curran v. Olson, 88 Minn. 307, 92 N. W. 1124 (1903); cases cited in footnote 3.

[5] Filas v. Daher, 300 Minn. 137, 218 N. W. 2d 467 (1974); Evanish v. V. F. W. Post No. 2717, 269 Minn. 209, 130 N. W. 2d 331 (1964); Swanson v. The Dugout, Inc. 256 Minn. 371, 98 N. W. 2d 213 (1959).

and "had a bearing on the question involved." 219 Minn. 408, 18 N. W. 2d 145.

Similarly, as plaintiff points out, this court noted in Klingbeil v. Truesdell, 256 Minn. 360, 363, 98 N. W. 2d 134, 138 (1959):

"He [the tavern owner] has the duty to see to it that a patron is not injured by *vicious* or drunken individuals whom he permits to frequent his establishment." (Italics supplied.)

The following cases from our sister states have expressly adopted the view that a tavern owner has a duty to exclude individuals who have *known* propensities for fighting.

In Peck v. Gerber, 154 Ore. 126, 130, 59 P. 2d 675, 677, 106 A. L. R. 996, 1000 (1936), the court stated:

"The negligence charged consists of 'admitting and inviting to The Rathskeller and permitting to remain there, Leslie Gordon, a person known to the defendants to have violent and disorderly propensities; permitting and allowing the disorderly conduct described herein; and failing to provide an employee or employees to maintain proper order and to exercise reasonable care for the safety, comfort and entertainment of the guests'.

"We are confronted with the question whether reasonable minds would differ upon the question whether the foregoing outline of testimony discloses negligence on defendants' part as charged in the complaint.

"The jury must have determined that it was negligent on the part of defendants not to have a special officer or other employee on duty to preserve order while plaintiff was sitting at a table in close proximity to the one at which Gordon was seated *or that defendant Bell knew Gordon was liable to conduct himself as he did and knowing that, said defendant was negligent in permitting Gordon to remain after singing.*" (Italics supplied.)

The Supreme Court of Montana expressly recognized the theory of negligence proposed by plaintiff in the case at bar in

Nevin v. Carlasco, 139 Mont. 512, 514, 365 P. 2d 637, 638 (1961). The court stated as follows:

"* * * [W]e find the general rule to be that the duty of a tavern keeper to protect a patron from injury by another arises only when one or more of the following circumstances exist:

"(1) A tavern keeper allowed a person on the premises who has a known propensity for fighting."

In accord is the case of Thomas v. Bruza, 151 Cal. App. 2d 150, 153, 311 P. 2d 128, 130 (1957), where the court said:

"* * * Respondent was concededly operating a barroom where the proprietor is obligated to be on the alert for quarrelsome and pugnacious characters who may at any time come to provoke others or to breach the peace. It is true that the mere sale of an alcoholic beverage to a bibulous and pugnacious person is not actionable, yet, if the proprietor of a saloon is so negligent as to the character of his patrons who frequent his establishment that he is as likely to cause damage to his innocent patrons by neglecting to guard them against the violence of known pugnacious, drunken men and evildoers as by neglecting to prevent a good citizen from falling on a newly waxed floor or from falling through a trapdoor into his cellar, then he is liable for his negligent failure to protect the innocent patron."

The evidence presented in the case at bar establishes the strongest possible basis for imposing liability under the theory of negligence advanced by plaintiff. Were this court to hold that appellants had no duty to exclude Mulligan from the tavern, then it would appear to us to be impossible under plaintiff's theory of liability for a patron to recover under any conceivable set of facts. We hold that, *under the evidence in this case,* the mere presence of Mulligan on appellants' premises presented a foreseeable risk of harm to other patrons, that said risk was well known and appreciated by appellants, who nonetheless allowed Mulligan to enter and remain at their tavern, and that the resulting injury to plaintiff was "caused" by the above negligent acts of appel-

14

lants so as to give rise to liability in appellants for that injury.[6]

## II

Appellants cite as error the trial court's refusal to allow the admission of evidence of plaintiff's propensities to begin altercations. It is appellants' contention that such evidence was relevant to the issue of contributory negligence.

The trial court explained its contested ruling as follows:

"* * * The Court permitted the showing of the character of Mulligan and his propensity for causing a disturbance and fights because they went to the question of whether the defendants DuFresne and their employees had knowledge of Mulligan's propensities to cause trouble and whether they were negligent in not excluding him from The Tap entirely. The character of Mettling was not in issue because the evidence conclusively showed that there was no justification for the assault committed. Even the testimony of Mulligan en camera shows that there were no aggravating circumstances whatsoever. Counsel for defendants asked Mulligan * * * the following question: 'Q. And his personality when he's been drinking too much turns into an aggravating or irritating conversation? A. Right. Q. Did that happen this night? A. Well, no, I don't really think it would that night. No, I couldn't say it did, but I knew it would have.'

"The Court submitted to the jury the question of negligence of the plaintiff. I am now of the opinion that this was error, but no prejudice resulted."

In Renne v. Gustafson, 292 Minn. 218, 194 N. W. 2d 267 (1972), this court stated the well-settled rule that relevancy of evidence rests in the discretion of the trial court and such deci-

---

[6] It is well settled in this jurisdiction that in examining a verdict on appeal the evidence must be considered in the light most favorable to the prevailing party and the verdict must be sustained if it is possible to do so on any reasonable theory of evidence. The verdict should not be disturbed unless it is manifestly and palpably contrary to the evidence. Carpenter v. Mattison, 300 Minn. 273, 219 N. W. 2d 625 (1974).

sions are not reversible absent a clear showing of abuse. In view of the above explanation, it is manifest that appellants have failed to show such *clear abuse*. Rather, it appears that the trial court was correct in excluding the evidence at issue.

III

During the course of trial, plaintiff's counsel was conducting direct examination of witness Oren Eide, at which time the following exchange occurred:

"Q. [By Mr. Prindle] Have you talked to other persons about Leo Mettling's [plaintiff] tendency or inclination to fight and brawl?

"A. I have never heard anything wrong about Leo.

"Q. Have you ever talked to any persons about—

"MR. PRINDLE: I didn't mean—I misspoke. I'll withdraw that question."

On cross-examination of the above witness, appellants' counsel approached the bench where the following conversation took place:

"MR. THOMPSON [appellants' counsel]: Your Honor, Mr. Mettling's character is now in issue because Mr. Prindle asked the question and got an answer—

"MR. PRINDLE: I want this on the record first, that that is a mistake and I misspoke, and I withdrew the question and the answer and stated that I had misspoken, and I now formally withdraw the question and ask that the answer be stricken and the jury instructed to disregard it. This was a mere slip of the tongue on my part, Your Honor.

"MR. THOMPSON: It was a complete question and a complete answer, and there was no misstatement before the answer came out, there was no formal withdrawal until this moment when I purposed and asked the Court to reverse its ruling to show the character of the plaintiff in this case.

"THE COURT: The request is denied.

"MR. THOMPSON: Well, on what grounds?

"THE COURT: On the ground that I assume that Mr. Prindle was honest when he made his statement that he misspoke or that it was a slip of the tongue.

"MR. PRINDLE: It certainly was and I'll be happy to have the Court make any precautionary instructions which the Court deems is indicated in this regard.

"MR. THOMPSON: Your Honor, it's too late.

"THE COURT: Let's proceed."

Appellants contend the trial court committed *reversible error* by closing the door to the admission of evidence on an issue which was inadvertently introduced by plaintiff's counsel. Appellants cite Maas v. Midway Chevrolet Co. 219 Minn. 461, 18 N. W. 2d 233 (1945), in support of this position. However, this reliance is misplaced for two reasons. First, Maas is factually distinguishable. Secondly, the court in Maas stated:

"* * * The withdrawal of evidence is discretionary with the trial court and may clearly be allowed where it is *irrelevant* and immaterial to the issue." (Italics supplied.) 219 Minn. 464, 18 N. W. 2d 235.

We hold that the trial court correctly concluded that evidence as to plaintiff's character was irrelevant in view of the defendant Mulligan's own testimony. Thus, appellants cannot contend that the above testimony as to plaintiff's good character was prejudicial to the degree of denying them a fair trial.

Affirmed.